70 F.3d 1263
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Barbara RIDDLE, Daughter of Charles Riddle, Petitioner,
v.
DIRECTOR, Office of Workers' Compensation Programs, United
States Department of Labor; Allied Signal,
Incorporated, Respondents.
 No. 95-1292.
 United States Court of Appeals, Fourth Circuit.
 Dec. 6, 1995.
 
 On Petition for Review of an Order of the Benefits Review Board. (93-890-BLA).
 Benita Yolan Whitman, Elkview, West Virginia, for Petitioner. Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation,
 Elizabeth Goodman, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.; William T. Brotherton, III, SPILMAN, THOMAS & BATTLE, Charleston, West Virginia, for Respondents.
 Before MURNAGHAN, WILKINSON, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Barbara Riddle, the dependent daughter of Charles Riddle, a former coal miner, appeals from a decision of the Benefits Review Board (Board) affirming the administrative law judge's (ALJ) decision to deny her application for black lung survivor's benefits. In denying benefits, the ALJ found that Riddle failed to establish that pneumoconiosis contributed to the miner's death under 20 C.F.R. Sec. 718.205(c) (1995). On appeal, Riddle contends that the ALJ applied the improper legal standard in determining whether death was due to pneumoconiosis under Sec. 718.205(c), and also erred by failing to find her entitled to invocation of the irrebuttable presumption of death due to pneumoconiosis under 20 C.F.R. Sec. 718.304 (1995). The Director, Office of Workers' Compensation Programs (Director) responds, supporting Riddle's first contention, but disagreeing with her second contention. Allied Signal Corporation (employer) also responds, urging affirmance of the Board's decision in all respects.
 
 
 2
 Initially, we disagree with the view of Riddle and the Director that the ALJ erred in this case by failing to apply the "hastened death" standard discussed in our decision in Shuff v. Cedar Coal Co., 967 F.2d 977, 979 (4th Cir.1992). Under Shuff, a claimant may establish that pneumoconiosis contributed to death by proving that pneumoconiosis "hastened" death in any way. As Riddle and the Director acknowledge, the ALJ noted the hastened death standard in his decision.
 
 
 3
 Riddle and the Director argue, however, that the ALJ ran afoul of Shuff by rejecting Dr. Hansbarger's opinion that pneumoconiosis hastened the miner's death on the ground that Dr. Hansbarger could not quantify the degree to which pneumoconiosis contributed to death. We conclude, however, that the ALJ properly found that Dr. Hansbarger was not only equivocal in his assessment of the degree to which pneumoconiosis might have contributed to death, but was also equivocal as to whether pneumoconiosis contributed at all. Based on this determination, the ALJ could properly deny benefits, even under the hastened death standard.
 
 
 4
 Dr. Hansbarger admitted that he could not assess whether pneumoconiosis actually impaired the miner, to a certain extent, or to any extent at all, without reference to objective tests such as pulmonary function studies. Such tests were never performed on the miner. In his decision denying reconsideration, the ALJ noted that Dr. Hansbarger's admission was the same reason given by Dr. Naeye, one of the employer's physicians, for finding no impairment attributable to pneumoconiosis. As there was no dispute among the physicians of record that there was no objective evidence of any impairment in this case, the ALJ rationally concluded that any finding of impairment could only be a "guesstimate."
 
 
 5
 Our review of Dr. Hansbarger's deposition testimony further persuades us that the ALJ properly found that Dr. Hansbarger merely guessed that pneumoconiosis contributed to the miner's demise. He stated that his finding of a causal connection between pneumoconiosis and death was based on the "severity of the disease more than anything else." But he admitted elsewhere in his testimony that neither severe simple pneumoconiosis, which the miner had, nor even complicated pneumoconiosis, an even more severe form of the disease, necessarily cause impairment, and that he could not ascertain whether any impairment was present in the absence of objective studies. He also rendered his opinion in equivocal terms, stating, as the ALJ noted, that he merely felt "that there was a pretty good chance" that pneumoconiosis contributed to death.
 
 
 6
 With regard to whether pneumoconiosis hastened death, Dr. Hansbarger was even more equivocal, stating that he believed that the time between the miner's aspiration* and the time of his death "may have been prolonged" had he not suffered from pneumoconiosis. He added that this opinion was "a total guess." Thus, even under the liberal "hastened death" standard, the ALJ properly found Dr. Hansbarger's opinion too equivocal to prove that the pneumoconiosis contributed
 
 
 7
 to death. Contrary to Riddle's assertion, Dr. Hansbarger's opinion is the only opinion of record which tends to support a finding of death due to pneumoconiosis. Dr. Hartman's finding that the miner had chronic obstructive pulmonary disease does not amount to a finding of "legal" pneumoconiosis because he failed to link the disease to the miner's coal mine employment. See 20 C.F.R. Sec. 718.201 (1995). Riddle therefore failed to directly establish any connection between pneumoconiosis and the miner's death.
 
 
 8
 Next, we agree with the Director and the employer that the ALJ properly determined that Dr. Hansbarger's finding of a fibrotic nodule measuring 1.8 centimeters in diameter was insufficient to invoke the irrebuttable presumption found at Sec. 718.304. The regulations provide that an opacity, yielded by X-ray, of more than one centimeter, is sufficient to establish "complicated pneumoconiosis" and invoke the irrebuttable presumption. See Sec. 718.304(a). The nodule in this case, however, appeared by autopsy. Under such circumstances, the nodule could only justify invocation of the presumption if a physician provided an opinion that such a nodule would produce an opacity of greater than one centimeter if viewed by X-ray, or an opinion that such a nodule constitutes a "massive lesion." See Sec. 718.304(b) & (c); Clites v. Jones & Laughlin Steel Corp., 663 F.2d 14, 16 (3d Cir.1981); Smith v. Island Creek Coal Co., 7 BLR 1-734, 737-38 (1985). In this case, no physician provided the requisite equivalency determination. Moreover, Dr. Hansbarger admitted that the nodule measuring 1.8 centimeters was not of sufficient size to evince complicated pneumoconiosis.
 
 
 9
 We therefore affirm the decision of the Board. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 The miner died of aspiration bronchopneumonia