PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DOUBLE B MINING, INCORPORATED,
Petitioner,

v.

LLOYD BLANKENSHIP; DIRECTOR,

OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 98-1206

On Petition for Review of an Order
of the Benefits Review Board.
(96-1444-BLA)

Argued: December 2, 1998

Decided: May 21, 1999

Before ERVIN and NIEMEYER, Circuit Judges, and
HILTON, Chief United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Ervin and Chief Judge Hilton joined.

_____

**COUNSEL**

**ARGUED:** Ronald Eugene Gilbertson, KILCULLEN, WILSON &
KILCULLEN, Washington, D.C., for Petitioner. Sarah Marie Hurley,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.,

for Respondent Director; Joseph E. Wolfe, WOLFE & FARMER, Norton, Virginia, for Respondent Blankenship. **ON BRIEF:** Marvin Krislov, Deputy Solicitor for National Operations, Donald E. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director. Vernon M. Williams, Bobby S. Belcher, Jr., WOLFE & FARMER, Norton, Virginia, for Respondent Blankenship.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Under the Black Lung Benefits Act, a coal miner is entitled to an irrebuttable presumption that he is totally disabled due to pneumoconiosis if he is able to show that he has "complicated pneumoconiosis" as defined by the Act. Because the administrative law judge failed to apply the statutory criteria for finding complicated pneumoconiosis in this case, we remand this case for further proceedings.

I

For over 20 years, Lloyd Blankenship worked as a coal miner for Double B Mining, Inc. in Grundy, Virginia. Acting on the advice of Dr. Emory Robinette, Blankenship stopped working in 1990 and underwent surgery to remove the lower portion of his left lung. Specimens taken from the removed lung were examined by Dr. J. W. Ferguson, a pathologist, who concluded that Blankenship was suffering from "anthrasilocotic pneumoconiosis with massive fibrosis."

Blankenship filed an application for black lung benefits, and the Department of Labor denied his claim. Following a hearing before an administrative law judge ("ALJ"), however, the ALJ found that Blankenship was totally disabled due to pneumoconiosis, applying 20 C.F.R. § 718.204(c)(4) (providing for total disability when "a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment"). The ALJ based his disability finding on the opinion testimony of Dr. Robinette.

2

Although Dr. Robinette found that Blankenship suffered from complicated coal workers' pneumoconiosis, he did not find that Blankenship was totally disabled. On the complicated pneumoconiosis issue, Dr. Robinette asserted that "a number of clinicians recognize complicated pneumoconiosis as representing a mass greater than 1 cm in size," implying that the 1.3 centimeter nodule found on Blankenship's lung was sufficient to indicate complicated pneumoconiosis.

Double B Mining offered the testimony of Dr. Echols Hansbarger, Jr., who based his opinion on the materials developed by Dr. Ferguson's biopsy. Dr. Hansbarger stated that while he agreed generally with Dr. Ferguson's pathology findings, he did not agree with the diagnosis of "massive fibrosis" and found no evidence of "complicated Coal Workers' Pneumoconiosis." Dr. Hansbarger asserted that complicated pneumoconiosis exists where there are nodules on the lungs that are larger than two centimeters in greatest dimension. He stated that the largest nodule on Blankenship's lungs was 1.3 centimeters in greatest dimension. He concluded that Blankenship had "Simple Coal Workers' Pneumoconiosis" and also that he had no restriction in pulmonary function. Drs. Dale Sargent, James Castle, and Gregory Fino also testified on behalf of Double B Mining, concluding that Blankenship suffered only from simple, not complicated, pneumoconiosis.

On appeal to the Benefits Review Board, the Board vacated the ALJ's opinion, finding that the ALJ had erred in relying on Dr. Robinette's statements for the proposition that Blankenship was totally disabled, because Dr. Robinette had not offered any such opinion. The Board, however, remanded the case for reconsideration under the regulation for complicated pneumoconiosis, 20 C.F.R.§ 718.304, which provides that there is "an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis" if a biopsy diagnoses him with "massive lesions in the lung." The Board instructed the ALJ first to examine the evidence in light of § 718.304 and then, if § 718.304 were determined to be inapplicable, to reexamine the evidence in light of § 718.204(c)(4), under which the ALJ had originally considered the matter.

On remand, the ALJ found that Blankenship had complicated pneumoconiosis, noting that Dr. Ferguson's diagnosis of "anthrasilocotic

3

pneumoconiosis with massive fibrosis" was sufficient to satisfy the "massive lesions" requirement and to trigger the irrebuttable presumption under 20 C.F.R. § 718.304(b). The ALJ noted, "Granted, Dr. Ferguson did not use the exact legislative words of art, but his finding[s] by biopsy are sufficient to fall within the criteria[for complicated pneumoconiosis] established by Congress in Section 718.304(b) for purposes of meeting Claimant's burden of proof." The ALJ rejected Dr. Hansbarger's opinion that complicated pneumoconiosis could only be diagnosed where there is a nodule larger than two centimeters in greatest dimension, stating, "Whether medically correct or not, Dr. Hansbarger's personal criteria is [sic] irrelevant."

On appeal for the second time, the Board affirmed the ALJ, endorsing both his reliance on Dr. Ferguson's diagnosis of"massive fibrosis" to find complicated pneumoconiosis and his rejection of Dr. Hansbarger's opinion. The Board stated that the ALJ"properly rejected Dr. Hansbarger's opinion that the nodules must be larger than two centimeters for a pathological finding of complicated pneumoconiosis because this is not supported by the `legislative criteria.'"

This appeal followed.

II

Section 921(c)(3) of the Black Lung Benefits Act, describing what is often called "complicated pneumoconiosis," creates an irrebuttable presumption that a coal miner is totally disabled due to pneumoconiosis if (A) an x-ray of the miner's lungs shows at least one opacity greater than one centimeter in diameter; (B) a biopsy reveals "massive lesions" in the lungs; or (C) a diagnosis by other means reveals a result equivalent to (A) or (B). See 30 U.S.C. § 921(c).* The regula-

_____

*Section 921(c)(3) provides in full:

> If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when

4

tions implementing the statute employ virtually the same language. See 20 C.F.R. § 718.304; cf. 20 C.F.R. § 410.418 (defining similarly "complicated pneumoconiosis" for Social Security purposes). A miner thus "afflicted with complicated pneumoconiosis, is `irrebuttably presumed' to be totally disabled due to pneumoconiosis." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 10-11 (1976); see also Lester v. Director, Office of Workers' Compensation Programs , 993 F.2d 1143, 1144 (4th Cir. 1993); Adkins v. Director, Office of Workers' Compensation Programs, 958 F.2d 49, 50 (4th Cir. 1992).

Because clauses (A), (B), and (C) of § 921(c)(3) are three different ways of diagnosing complicated pneumoconiosis, in construing the requirements of each, one must perform equivalency determinations to make certain that regardless of which diagnostic technique is used, the same underlying condition triggers the irrebuttable presumption. In other words, the same condition that triggers the presumption by producing opacities greater than one centimeter in diameter on an x-ray should be considered "massive lesions" under the statute if diagnosed through biopsy. By explicitly referencing prongs (A) and (B) as guides, prong (C) of the statute requires "plainly that equivalency determinations shall be made." Clites v. Jones & Laughlin Steel Corp., 663 F.2d 14, 16 (3d Cir. 1981). Logic commands that prongs (A) and (B) be similarly equivalent. Any other rule would lead to the irrational result that the determination of whether a miner has totally disabling pneumoconiosis could turn on the method of diagnosis rather than on the severity of his disease.

Because prong (A) sets out an entirely objective scientific standard, it provides the mechanism for determining equivalencies under prong

_____

diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be.

5

(B) or prong (C). In prong (A), Congress mandated that the condition that triggers the irrebuttable presumption is one that creates, on an x-ray, at least one opacity greater than one centimeter in diameter. When that condition is diagnosed by biopsy rather than x-ray, it must therefore be determined whether the biopsy results show a condition that would produce opacities of greater than one centimeter in diameter on an x-ray. That is to say, "massive lesions," as described in prong (B), are lesions that when x-rayed, show as opacities greater than one centimeter in diameter.

It has frequently been expressed in the medical community and by the Benefits Review Board that at least one lesion of two centimeters or greater in diameter is the minimum requirement for establishing "massive lesions" and thereby invoking the irrebuttable presumption. For this reason, in Riddle v. Director, Office of Workers' Compensation Programs, No. 95-1292 1995 WL 715303, at *2 (4th Cir. Dec. 6, 1995) (unpublished), we agreed with the Director, the ALJ, and the Benefits Review Board that a fibrotic nodule measuring 1.8 centimeters in diameter by autopsy did not constitute "massive lesions" as prescribed by the statute. Additionally, the Pneumoconiosis Committee of the College of American Pathologists long ago set two centimeters as the minimum diameter for a lesion to constitute complicated pneumoconiosis. See Jerome Kleinerman, Pathology Standards for Coal Workers Pneumoconiosis: Report of the Pneumoconiosis Committee of the College of American Pathologists to the National Institute for Occupational Safety and Health, 103 Archives of Pathology & Laboratory Medicine 379 (1979); see also Allen R. Prunty & Mark E. Solomons, The Federal Black Lung Program: Its Evolution and Current Issues, 91 W. Va. L. Rev. 665, 673 n.22 (1989) (noting that complicated pneumoconiosis "is diagnosed by x-ray evidence of simple pneumoconiosis plus larger lesions (nodules) of disease, at least one centimeter in size" or "diagnosed by biopsy or autopsy evidence of massive lesions, usually two centimeters or larger" (citations omitted)). The two-centimeter standard recognizes the fact that "nodules are generally larger on autopsy examination than they appear on a chest radiograph." N. LeRoy Lapp, M.D., A Lawyer's Medical Guide to Black Lung Litigation, 83 W. Va. L. Rev. 721, 736 (1981).

We decline, however, to impose the two-centimeter rule on the Benefits Review Board. The statute does not mandate use of the med-

ical definition of complicated pneumoconiosis. Rather, it requires, if diagnosis is by biopsy, that a miner have "massive lesions," which, as we have noted, are lesions that would show on an x-ray as opacities of at least one centimeter. In short, 30 U.S.C.§ 921(c)(3) requires that an equivalency determination be made.

We have been presented with nothing in the record of this case to demonstrate that the ALJ made this equivalency determination as required by the statute. Dr. Ferguson found a thickened and pigmented area measuring two to three centimeters at its greatest dimension, which he described as a "mass." He diagnosed this to be a "massive fibrosis." The statute, however, requires a diagnosis of "massive lesions." See 30 U.S.C. § 921(c)(3). Apparently, the largest lesion or nodule that Dr. Ferguson found was 1.3 centimeters in diameter. With these findings alone, we conclude that the evidence is insufficient to determine whether Blankenship had complicated pneumoconiosis.

To determine whether Blankenship's condition meets the statutory criteria, we must remand this case to the Board for remand to the ALJ to find whether the 1.3-centimeter lesion would, if x-rayed prior to removal of that portion of Blankenship's lung, have showed as a one-centimeter opacity.

It may be necessary for an ALJ to make a separate equivalency determination each time a miner presents evidence of massive lesions diagnosed by biopsy. On the other hand, it may be possible for the Department of Labor to engage in a single fact-finding exercise to determine how large a lesion must be in order to appear on an x-ray as a greater-than-one-centimeter opacity and thereafter to promulgate a rule imposing this finding on all future cases. Either way, however, an equivalency determination must be made.

The decision of the Board in this case is accordingly vacated and the case remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED

7