OPINION
PER CURIAM.
The Department of Labor’s Benefits Review Board affirmed an award of survivor’s benefits to Dorothy Fultz under the Black Lung Benefits Act, 30 U.S.C.A. §§ 901-945 (1986 & Supp. 2002) (the Act), based on the administrative law judge’s finding that Mrs. Fultz successfully invoked the irrebuttable presumption under 30 U.S.C.A. § 921(c)(3) and 20 C.F.R. § 718.304 (2002) that the death of her husband, a coal miner, was due to pneumoconiosis. Recognizing that there was autopsy evidence that showed lesions of 2 centimeters and autopsy evidence that showed evidence of 1.2 centimeter lesions, the ALJ made an equivalency determination, finding that “regardless of whether [the lesions] exceeded 2 centimeters ... or were 1.2 centimeters ..., [they] would be expected on x-ray to yield one or more large opacities (i.e., greater than 1 centimeter in diamater)” and that “it is undisputed that [Fultz] had at least 1.2 centimeter lesions of coal workers pneumoconiosis on autopsy and I find that these autopsy findings satisfy the statutory and regulatory definition.” (J.A. at 215.) Because the record in this case lacks any evidence establishing that the size of a lesion on autopsy is equivalent to the size of a lesion on x-ray that would support this equivalency determination, we remand this case for such testimony and any other further proceedings consistent with this opinion.
I.
Clarence Fultz worked for at least thirty years as a coal miner, ending in 1982. He died in 1999, and according to his death certificate, the cause of his death was respiratory failure due to extensive squamous cell carcinoma with coal worker’s pneumoconiosis listed as an underlying condition. Following his death, Dorothy Fultz, his widow, filed an application for survivor’s benefits under the Act. The Department of Labor determined that Mrs. Fultz was eligible for benefits, and the claim was referred to the Office of Administrative Law Judges. Clinchfield Coal agreed that it was the “responsible operator” and therefore would be liable for the payment of benefits if any were to be awarded to Mrs. Fultz. See 20 C.F.R. §§ 725.490, 725.492 (2002). Clinchfield Coal has also agreed that Mr. Fultz had pneumo-coniosis and that he had 30 years of coal mine employment. On the issue of whether the miner died due to pneumoconiosis, the administrative law judge (ALJ) found that Mrs. Fultz successfully invoked the irrebuttable presumption of 20 C.F.R. § 718.304 that the miner’s death was due to pneumoconiosis. Although the ALJ considered x-ray evidence, CT scans, autopsy evidence and medical reports, in awarding benefits, the ALJ concluded that only the autopsy evi *868 dence supported the invocation of the presumption.
Reviewing the autopsy evidence, the ALJ considered an autopsy report prepared by Dr. Brooks. Upon gross examination, Dr. Brooks found “multiple tracheobronchial lymph nodes showing anthracotic changes and fibrosis” in the trachea, “severe” anthracosis in the lungs, shown by “multiple areas of black macular discoloration,” and “multiple areas of fibrosis and firm nodules in both lungs.” (J.A. at 32.) In the autopsy report, Dr. Brooks listed, but did not discuss, twenty-two slide cassettes of tissue taken during the autopsy. Dr. Brooks concluded that “[t]he immediate cause of this patient’s death is respiratory failure due to complicated coal worker’s pneumoconiosis, COPD, metastatic squamous cell carcinoma of the lungs, and multifocal post obstructive acute pneumonia.” (J.A. at 33.) In her deposition in the administrative proceeding, Dr. Brooks testified that “virtually every slide has no viable lung tissue left. It’s mostly fibrotic.” (J.A. at 110.) Asked whether she had found “lesions ... resulting from coal-dust exposure on his lung in excess of two centimeters,” Dr. Brooks replied that she had, and that the lesions meeting that description were “[t]oo numerous to count.” (J.A. at 119.)
The ALJ also considered the opinions of Dr. Kleinerman and Dr. Caffrey, who reviewed Mr. Fultz’s medical records and tissue slides from the autopsy. In his report, Dr. Kleinerman found “a moderate profusion of lesions of simple CWP,” “[l]esions of simple nodular silicosis,” and “[mjacronodular lesions of silicosis,” in addition to lesions of squamous cell carcinoma. (J.A. at 44.) Dr. Kleinerman concluded that “Mr. Fultz had a moderate extent of simple CWP and simple nodular silicosis,” but that his death was the result of “extensive squamous cell carcinoma involving his lungs.” (J.A. at 45.) The ALJ noted that Dr. Kleinerman “did not provide an estimate of the size of the lesions attributable either to coal worker’s pneumoconiosis or to silicosis.” (J.A. at 214.)
In his report, Dr. Caffrey gave a diagnosis based on the autopsy slides of “simple coal worker’s pneumoconiosis and macro-nodular coal worker’s pneumoconiosis, extensive,” as well as squamous cell carcinoma, emphysema, bronchopneumonia, and pleuritis. (J.A. at 85.) Dr. Caffrey concluded that “the patient’s immediate cause of death was due to extensive keratinizing, squamous cell carcinoma” with “terminal!], acute bronchopneumonia.” (J.A. at 87.) Dr. Caffrey also concluded that Mr. Fultz “showed a moderately severe case of simple coal worker’s pneumoconiosis and nodular coal worker’s pneumoconiosis.” (J.A. at 87.) He reported that “[t]he size of the macronodular lesions that were present on the [autopsy] slides that [he] reviewed were up to 1.2 cms.” (J.A. at 87.)
Based on these reports, the ALJ found “that the lesions found on autopsy, regardless of whether they exceeded 2 centimeters as Dr. Brooks found or were 1.2 centimeters as Dr. Caffrey found, would be expected on x-ray to yield one or more large opacities (i.e., greater than 1 centimeter in diameter).” (J.A. at 215.) The ALJ held that considering all of the evidence together, the pathological evidence, including the well-reasoned opinions of Dr. Brooks and Dr. Caffrey, outweighed the other evidence. (J.A. at 215.) Accordingly, the ALJ held that Mrs. Fultz was entitled to the irrebuttable presumption of death due to pneumoconiosis under 20 C.F.R. § 718.304 and awarded benefits to Mrs. Fultz.
*869 The Benefits Review Board affirmed the ALJ’s award of benefits, and Clinchfield Coal filed this petition for review.
II.
We review Mrs. Fultz’s claim for benefits under the Act to determine whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and the ALJ are rational and consistent with applicable law. Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 190 (4th Cir.2000). When reviewing a factual finding, we must affirm the ALJ’s decision if it is supported by substantial evidence, Thom v. Itmann Coal Co., 3 F.3d 713, 718 (4th Cir.1993), which is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,” Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citations omitted). Under the Act, an eligible claimant is entitled to survivor’s benefits if the miner’s death was “due to” pneumoconiosis. 20 C.F.R. § 718.205 (2002).
When a miner is “afflicted with complicated pneumoconiosis, [it] is ‘irrebuttably presumed’ ... that his death was due to pneumoconiosis.” Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 11, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The irrebuttable presumption applies if “(A) an x-ray of the miner’s lungs shows at least one opacity greater than one centimeter in diameter; (B) a biopsy or autopsy reveals ‘massive lesions’ in the lungs; or (C) a diagnosis by other means reveals a result equivalent to (A) or (B).” Eastern Associated Coal Corp. v. Director, Office of Workers’ Compensation Programs, 220 F.3d 250, 255 (4th Cir.2000) (citing 30 U.S.C.A. § 921(c)). We have held that the three methods of invoking the irrebuttable presumption found in clauses (A), (B), and (C) “describe a single, objective condition.” Eastern, 220 F.3d at 255. Therefore, the ALJ must make an equivalency determination “to make certain that regardless of which diagnostic technique is used, the same underlying condition triggers the irrebuttable presumption.”[1] Double B Min *870 ing, Inc. v. Blankenship, 177 F.3d 240, 244 (4th Cir.1999). Because clause (A) sets out an entirely objective scientific standard, i.e., an opacity on an x-ray greater than one centimeter, we have held that it is the benchmark to which evidence under the other clauses in compared. See Eastern, 220 F.3d at 256; Double B, 177 F.3d at 244. Accordingly, “massive lesions” sufficient to invoke the irrebuttable presumption under clause (B) are those that “when x-rayed ... would show as opacities greater than one centimeter.” Eastern, 220 F.3d at 258.
After reviewing the evidence in this case, the ALJ concluded “that the lesions found on autopsy, regardless of whether they exceeded 2 centimeters as Dr. Brooks found or were 1.2 centimeters as Dr. Caffrey found, would be expected on x-ray to yield one or more large opacities (i.e., greater than 1 centimeter in diameter).” (J.A. at 215.) There was no testimony or medical report or evidence indicating that the lesions discovered on autopsy would be expected on x-ray to yield one or more opacities of greater than one centimeter or that the size of a lesion on autopsy was equivalent or less than the expected size on x-ray. In fact, both Dr. Caffrey and Dr. Brooks declined to offer an opinion on that point. When asked whether he could state to a reasonable degree of medical certainty that the lesions he saw on the autopsy slides were “the medical equivalent of a one centimeter x-ray reading,” Dr. Caffrey stated “I don’t know.”[2] (J.A. *871 at 213-14.) Similarly, when asked if she could opine as to whether the lesions found on autopsy “were complicated pneumoconiosis [that] would have shown up on a chest x-ray,” Dr. Brooks stated, “I can’t comment on that.” (J.A. at 122.) Thus, when specifically questioned, Dr. Brooks herself was unable to correlate her findings on autopsy with the expected size of the lesions on x-ray.
While there may be lesions so large that it is self-evident that they would have shown as opacities greater than one centimeter on x-ray, we cannot presume that lesions of 1.2 centimeters[3] are so large that there need be no further testimony or evidence as to whether they would have shown on x-ray as opacities of greater than one centimeter. Cf. Double B, 177 F.3d at 244 (concluding that evidence of lesions of 1.3 centimeters, standing alone, was insufficient to determine whether miner had complicated pneumoconiosis and remanding for an equivalency determination); see also id. (noting that “ ‘nodules are generally larger on autopsy examination than they appear on a chest radiograph’” (quoting N. LeRoy Lapp, M.D., A Lawyer’s Medical Guide to Black Lung Litigation, 83 W. Va. L. Rev. 721, 736 (1981))). Without more, we cannot conclude that the ALJ’s finding that the lesions would have shown as one or more opacities of greater than one centimeter is supported by substantial evidence.[4]
III.
Because there was insufficient evidence to support the ALJ’s finding that Mr. Fultz had lesions that would have shown as greater than one centimeter on x-ray, we vacate the Board’s decision upholding the award of benefits to Mrs. Fultz and direct the Board to remand the case to an ALJ for further proceedings consistent *872 with this opinion.[5]

VACATED AND REMANDED.

. Our dissenting sister is correct that the ALJ must make an equivalency determination. See post at 873-874. That determination, however, must be supported by substantial evidence. The dissent’s reliance on Eastern Associated Coal Corp. v. Director, OWCP, 220 F.3d 250, 254 (4th Cir.2000), is misplaced. In Eastern, the ALJ considered x-ray evidence including readings by several doctors who read the x-ray as showing one or more opacities larger than one centimeter and autopsy evidence showing lesions of 1.7 centimeters. Eastern, 220 F.3d at 253-57. We held that although the ALJ’s conclusion that prong (B) was satisfied by the autopsy evidence was based on an incorrect analysis, the autopsy evidence did not undermine the ALJ’s conclusion that prong (A) was satisfied by the x-ray evidence, id. at 257, because where "the x-ray evidence vividly displays opacities exceeding one centimeter, ... the x-ray evidence can lose force only if other evidence affirmatively shows that the opacities are not there or are not what they seem to be, perhaps because of an intervening pathology, some technical problem with the equipment used, or incompetence of the reader,” id. at 256. The autopsy evidence did not undermine the x-ray evidence because ”[w]e [were] given no reason to believe that nodules of 1.7 centimeters would not produce x-ray opacities greater than one centimeter. To the contrary, the 1991 x-ray, showing opacities greater than one centimeter in diameter, provide[d] persuasive evidence that the miner’s lesions did in fact show as opacities of that size.” Id. at 258.
Thus, in Eastern, we did not find that autopsy evidence of lesions of 1.7 centimeters supported invocation of the irrebuttable presumption. Instead, we held that where doctors read the x-ray evidence as showing lesions of greater than one centimeter in diameter, autopsy evidence of lesions of 1.7 centimeters did not undermine the x-ray evidence.
In this case, however, the ALJ found that none of the x-ray readings "indicated] opacities of 1 centimeter in diameter or more.” *870 (J.A. at 210.) Accordingly, here we are considering whether the autopsy evidence by itself supports invocation of the irrebuttable presumption, not whether the autopsy evidence undermines other evidence. The ALJ's equivalency determination in this case is not supported by substantial evidence because we have no testimony, medical report, or evidence indicating that the lesions discovered on autopsy would be expected on x-ray to yield one or more opacities of greater than one centimeter.
The rule that my dissenting colleague posits, that the ALJ’s equivalency determination need not be supported by substantial evidence, has no boundaries. For example, it would allow the ALJ to make an equivalency determination that a lesion of 0.75 centimeters on autopsy would show as greater than one centimeter on x-ray.

. The dissent reads too much into Dr. Caffrey’s deposition testimony. The entire sequence of questions is as follows:
Q. Okay. Do you feel that you could state to a reasonable degree of medical certainty, Dr. Caffrey, that from what you saw on the slides, do you think that that’s a medical equivalent of a one centimeter x-ray reading of a nodule of coal dust?
A. I don’t know, sir. It’s very difficult, in my opinion, to be very objective in comparing the size of the lesion grossly or microscopically with the x-ray changes, unless you're looking at them at the same time. In other words, if you had the x-ray in the autopsy suite, up on the Roentgenogram, the x-ray view boxes, and you looked at those, then measured the size—and you had a highly skilled radiologist with you—and then you saw the lesions at the autopsy table and you compared them; that, to me, is the only real objective way to determine if the sizes are very similar.
Q. Okay. But the x-rays are done on a scale of 1—to—1; in other words, there’s no enlargement or decrease in size on an x-ray, is there—
A. Not that I know of.
Q. —unless it's noted or something?
A. Not that I know of.
Q. Okay. So do you think it’s very possible that the 1.2 centimeter size could be the medical equivalent of a one centimeter measurement on a x-ray?
A. It could be.
Q. And would you go as far as to say, very likely it would be the equivalent?
A. I don’t know. That would be speculation on my part.
(J.A. at 164-65.) This testimony is hardly the substantial evidence required to support the ALJ’s finding of equivalency. Rather than being a concession that lesions of 1.2 centimeters would show on x-ray as greater than one centimeter, see post at 872-873, 874-875, Dr. Caffrey’s testimony "it could be” is simply part of his string of responses indicating that he did not know how the lesions would show *871 on x-ray and that any guess would be speculation. The ALJ noted that Dr. Caffrey "declined to say that the two [the autopsy and the x-ray] would be equivalent as it would involve speculation on his part.” (J.A. at 214.)

. The dissent would have us rely on the testimony of Dr. Brooks to support the equivalency determination, even though the ALJ explicitly did not. See post at 874-875. The ALJ held that even if the lesions "were 1.2 centimeters as Dr. Caffrey found,” the lesions would be expected to show as greater than one centimeter on x-ray and that "it is undisputed that the Miner had at least 1.2 centimeter lesions of coal workers pneumoconiosis on autopsy and I find that these autopsy findings satisfy the statutory and regulatory definition.” (J.A. at 215.) Our review of an ALJ’s findings, as affirmed by the Board, is very limited. “We may not reweigh the evidence or substitute our views for those of the ALJ....” Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir.1997). As the ALJ’s finding was lesions of 1.2 centimeters satisfied the statutory and regulatory definition, it is that finding that we must review. Plainly, Dr. Brooks’s testimony does nothing to support this finding. As there is no medical report, testimony or other evidence indicating that the lesions of 1.2 centimeters would be expected to show as greater than one centimeter on x-ray, the finding is not supported by substantial evidence.

. Clinchfield Coal argues that the autopsy report should not have been considered because it did not comply with 20 C.F.R. § 718.106 (2000). Mrs. Fultz argues, and the BRB concluded, that the autopsy report, when considered with Dr. Brooks's later deposition testimony, substantially complied with the requirements of 20 C.F.R. § 718.106. We assume without deciding that the ALJ properly considered the autopsy report. Even making this assumption, there is insufficient evidence to support the ALJ’s finding that the lesions would have shown as opacities of greater than one centimeter. We thus reach neither the issue of whether substantial compliance with the regulation is sufficient nor the issue of whether evidence outside the autopsy report itself may be considered in determining whether the requirements of 20 C.F.R. § 718.106 are met.

. The tenor of the dissent would suggest that this opinion precludes the miner’s widow from obtaining benefits. To the contrary, we axe remanding for the ALJ to make a factual finding based on testimony, medical reports or other evidence that the opacities would show as greater than one centimeter. Nothing in this opinion precludes the miner’s widow from receiving benefits or precludes invocation of the irrebuttable presumption based on an equivalency determination supported by substantial evidence.