DIANA GRIBBON MOTZ, Circuit Judge,
dissenting:
The majority vacates the award of black lung benefits to the widow of Clarence Fultz, who died in 1999 after working as a coal miner for more than 30 years. I respectfully dissent.
It is conceded that Mrs. Fultz is entitled to survivor’s benefits if her husband’s death was “due to pneumoconiosis.” The Black Lung Benefits Act provides an irrebuttable presumption of “death due to pneumoconiosis” if “a miner is suffering from a chronic dust disease of the lung” which:
(A) when diagnosed by chest roentgenogram [x-ray], yields one or more large opacities (greater than one centimeter in diameter) ..., (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B).
30 U.S.C.A. § 921(c)(3) (1986).[1] Circuit precedent requires that “the ALJ ma[ke] [an] equivalency determination” between the standards of prongs (A) and (B) of § 921(c)(3)—to assure that the “massive lesions” diagnosed by autopsy or biopsy under (B) would if contemporaneously xrayed show an opacity of “greater than one centimeter” under (A). Double B Mining, Inc. v. Blankenship, 177 F.3d 240, 244 (4th Cir.1999).
Here the ALJ made the required equivalency determination, finding that “the lesions found on autopsy, regardless of whether they exceeded 2 centimeters as Dr. Brooks found or were 1.2 centimeters as Dr. Caffrey found, would be expected on x-ray to yield one or more large opacities, (i.e., greater than one centimeter in diameter)[.]” Nevertheless, the majority vacates the benefits award, asserting that no “substantial evidence” supports the ALJ’s equivalency determination. I believe the majority seriously errs in doing so.
First, although the majority states the correct “substantial evidence” standard of review, it fails to apply that standard. A court reviewing an administrative decision to determine if it is supported by substantial evidence is not authorized to subject the decision to burdensome fly-specking. Rather, a court “must affirm” an ALJ’s decision if, “in light of the whole record,” the decision is supported by evidence of “sufficient quality and quantity ‘as a reasonable mind might accept as adequate to support the finding under review.’” Piney Mountain, 176 F.3d at 756 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted)) (emphasis added). Thus, “the Supreme Court has directed us to uphold decisions that rest within the realm of rationality; a reviewing court has no license to ‘set aside an *873 inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis.’ ” Id. at 756 (quoting Doss v. Director, OWCP, 53 F.3d 654, 659 (4th Cir.1995) (internal quotation marks omitted)) (emphasis added). Unfortunately, however, even a quick review of the record evidence here demonstrates that the majority has appropriated for itself precisely such a “license.”
The record reveals that Mrs. Fultz offered powerful evidence of lesions on Mr. Fultz’s lungs resulting from coal-dust exposure, which exceeded not one, but two, centimeters. Dr. Brooks, who performed the autopsy of Mr. Fultz and diagnosed the cause of death as due, in part, to complicated pneumoconiosis, explained in detail that she found many—“too numerous to count”—large coal-dust lesions “in excess of two centimeters.” Dr. Brooks’ autopsy report confirmed that “[ajnthracosis [wa]s severe” with “multiple areas of black macular discoloration,” that “[t]he bronchi contain copious amounts of purulent material,” and “multiple areas of fibrosis and firm nodules” were found in both lungs. Although the company’s expert, Dr. Caffrey, disagreed with Dr. Brooks’ ultimate conclusion (i.e., that Mr. Fultz had complicated rather than “moderately severe” simple pneumoconiosis), he too found lesions on the autopsy slides exceeding one centimeter (albeit only lesions of 1.2, rather than two, centimeters). Moreover, when asked if there would be “enlargement or decrease in [the] size [of these lesions] on x-ray,” Dr. Caffrey testified, “not that I know of,” and while he also did not know whether the autopsy and x-ray measurements were “very likely” equivalent, he acknowledged that “it could be” “very possible that the 1.2 centimeter size [of autopsy lesions] could be the medical equivalent of a one centimeter measurement on x-ray.” Relying on this evidence, the ALJ found that even Dr. Caffrey (the company’s expert) “stated no basis for determining that the 1.2 centimeter lesions observed on the pathology slides would equate to less than the 1.2 centimeters on x-ray” and that the lesions on Mr. Fultz’s lungs, whether 2 centimeters (Dr. Brooks’ view) or 1.2 centimeters (Dr. Caffrey’s view), “would be expected on x-ray to yield one or more large opacities ... greater than 1 centimeter in diameter.” Certainly, a “reasonable mind” could “accept” the record evidence as “adequate” to support this equivalency determination by the ALJ. See Piney Mountain, 176 F.3d at 756 (internal quotation marks omitted). Thus, proper application of the substantial evidence standard requires us to “uphold” the ALJ’s decision. Id.
I confess that I do not fully understand the majority’s refusal to do so. That refusal seems to stem from the majority’s misunderstanding of the relevant law and from its unjustified disregard of crucial evidence.
As to the former, the majority appears to believe that, in order to establish equivalency, the law requires a claimant to offer evidence that a medical professional, rather than the ALJ, has made the equivalency determination. Thus, the majority rejects the ALJ’s express equivalency determination because there was “no testimony or medical report or evidence indicating that the lesions discovered on autopsy would be expected on x-ray to yield one or more opacities of greater than one centimeter.” Ante at 869-870 n. 1. Imposing a requirement that medical evidence contain the equivalency determination is, however, directly at odds with circuit precedent.
Indeed, when we first announced the equivalency requirement in Double B Mining, we made it plain that the ALJ is to make the equivalency determination. *874 In that ease, the miner’s physician observed a nodule of 1.3 centimeters on biopsy of the miner’s lung and opined that a nodule in excess of one centimeter indicated complicated pneumoconiosis; the company’s expert contended that “complicated pneumoconiosis exists [only] where there are nodules on the lungs that are larger than two centimeters in greatest dimension.” We expressly refused “to impose the two-centimeter rule on the Benefits Review Board,” reasoning that the “statute d[id] not mandate” such a rule. Id. at 243. Instead, we held that because “nothing in the record ... demonstrate^] that the ALJ made thfe] equivalency determination as required by the statute,” we would remand the case “to the ALJ to find whether the 1.3-centimeter lesion would, if x-rayed prior to removal of that portion of Blankenship’s lung, have showed as a one-centimeter opacity.” Id. at 244 (emphasis added); see also id. (concluding that the ALJ must make the “equivalency determination”).
Thus, in Double B Mining, we emphasized that the ALJ is to make the necessary equivalency determination. Moreover, a year later in Eastern Associated Coal Corp. v. Director, OWCP, 220 F.3d 250, 254 (4th Cir.2000), we affirmed an award of benefits even though no medical expert made an equivalency determination. In fact, we upheld the ALJ’s determination in part because there was “no reason to believe” that autopsy evidence of nodules greater than one centimeter “would not produce x-ray opacities greater than one centimeter.” Id. at 258. Yet the majority rejects the ALJ’s similar reasoning here that nothing (not even the company doctor’s testimony) indicates that autopsy evidence of nodules greater than one eentimeter would not “equate” to x-ray opacities greater than one centimeter. The rationale for the majority’s apparent imposition of a requirement that a medical expert make the equivalency determination is thus very puzzling.
Even more puzzling is the only other basis the majority offers for its refusal to find the ALJ’s equivalency determination not supported by substantial evidence. That is, the majority’s statement that although “there may be lesions so large that it is self-evident that they would have shown as opacities greater than one centimeter on x-ray,” such a “self-evident” conclusion is not possible here because it cannot be “presume[d] that lesions of 1.2 centimeters are so large that there need be no further testimony or evidence as to whether they would have shown on x-ray as opacities greater than one centimeter.” Ante at 871 (emphasis added) (footnote omitted). In arriving at this conclusion, the majority disregards Dr. Brooks’ powerful testimony of numerous (“too many to count”) lesions in excess of two (not 1.2) centimeters.[2] The majority’s failure to consider this evidence is important because through it, Mrs. Fultz presented autopsy evidence of black lung lesions which exceed the apparent two-centimeter “gold standard” frequently advanced by the American College of Pathologists and employers as conclusively establishing complicated pneumoconiosis. Cf. Double B Mining, 177 F.3d at 243-44; Piney Mountain, 176 F.3d at 761 n. 8. Surely such evidence suffices to meet the majority’s own “self-evident” standard. Yet the majority completely rejects it.
In sum, despite Dr. Brooks’ findings of multiple lesions greater than two centimeters, Dr. Caffrey’s findings of lesions of at *875 least 1.2 centimeters, and his concession that “it could be” “very possible” that such lesions are “the medical equivalent of a one centimeter measurement on x-ray,” the majority concludes that the ALJ did not have substantial evidence to support her equivalency determination. Because this conclusion is based on a failure to apply the governing standard of review, an imposition of an unauthorized legal burden, and the disregard of record evidence, I must respectfully dissent.

. Such a condition "is commonly referred to as 'complicated’ pneumoconiosis.” Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 757 n. 3 (4th Cir.1999).

. The majority criticizes my reliance, in part, on Dr. Brooks’ testimony. The ALJ clearly relied on this evidence, although she declined to resolve the differing opinions on the size of the lesions based on the undisputed findings of lesions of "at least 1.2 centimeter[s].”