**Eula B. LESTER, Widow of Martin E. Lester, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 92–1329.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1993.

Decided May 26, 1993.

Thomas E. Johnson, Johnson, Schaaf, Jones & Snelling, Chicago, IL, argued, for petitioner.

Marta Kusic, U.S. Dept. of Labor, Washington, DC, argued (Marshall J. Breger, Sol. of Labor, Donald S. Shire, Associate Sol., Michael J. Denney, Counsel for Appellate Litigation, C. William Mangum, on brief), for respondent.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

Eula Lester, widow of a miner, Martin Lester, brought two claims, one for herself as survivor and one on behalf of her deceased husband as a miner, under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. and regulations thereunder. The Director of the Office of Workers' Compensation Programs (OWCP) denied both claims, and his decision was appealed to an Administrative Law Judge for a formal hearing. The ALJ also denied benefits on both claims, and her decision and order were affirmed by the Benefits Review Board. The only issue raised by Lester in the present appeal is whether she has established an irrebuttable presumption under 30 U.S.C. § 921(c)(3) (20 C.F.R. § 718.304) of death or disability due to pneumoconiosis, entitling her to benefits under the Act.

Under § 921(c)(3), if a miner, or his survivor, can prove that the miner suffered from *complicated* pneumoconiosis, as defined by that section, then the claimant gains an irrebuttable presumption of causality.

Section 921(c)(3) provides that:

(c) Presumptions

For purposes of this section

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentegenogram [x-ray], yields one or more large opacities (greater than 1 centimeter in diameter) and would be classified in category A, B or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that at the time of his death he was totally disabled by pneumoconiosis.

Lester, in support of her claim under § 921(c)(3), relies on one conforming chest x-ray reading that was done by Dr. Pitman, a Board-certified radiologist, on October 19, 1982. Dr. Pitman read the x-ray as showing small opacities of category 0/1 s/t, and large opacities of category B. Such evidence would be relevant under subsection (3)(A).

While Dr. Pitman's reading would support a finding of complicated pneumoconiosis, all other evidence in the record indicates that at most Mr. Lester suffered from simple pneumoconiosis. A biopsy test performed during Mr. Lester's hospitalization and shortly before his death did not indicate a diagnosis of pneumoconiosis. Drs. Acosta and Behrns, who completed an autopsy of Mr. Lester, did not find massive lesions in either of his lungs or any other indications of complicated pneumoconiosis; though they did note evidence that would support a finding of simple pneumoconiosis.

In addition to the two medical reports contradicting Dr. Pitman's finding of complicated pneumoconiosis, the medical opinions of other physicians who did not find complicated pneumoconiosis also were put into evidence.* The most significant of these was the opinion of a pathologist, Dr. Abraham, who examined the autopsy report and slides containing Mr. Lester's lung tissue. Dr. Abraham diagnosed only a minimal degree of pneumoconiosis.

In her review of Lester's claims, the ALJ accorded the most weight to Dr. Abraham's report based on Abraham's significant expertise as a Board-certified pathologist. The ALJ concluded that the evidence was insufficient to establish the existence of complicated pneumoconiosis. Therefore, she ruled that Lester failed to support an irrebuttable presumption under § 921(c)(3).

■ On appeal, the Benefits Review Board confirmed the ALJ's conclusions, holding that "the administrative law judge properly weighed the radiographic and autopsy evidence in determining whether the evidence was sufficient to establish the existence of complicated pneumoconiosis and thus, invoke the irrebuttable presumption." The Board relied on its decision in *Melnick v. Consolidation Coal Co.*, 16 B.L.R. 1–31 (1991) which interpreted § 921(c)(3) as necessitating the weighing of conflicting evidence on the question of whether complicated pneumoconiosis was present. The Board's holding in *Melnick* has been applied subsequently by the OWCP in black lung cases. *See, e.g., Swafford v. Big Ugly Coal Co.*, 1993 BLA LEXIS 27 (Jan. 6, 1993) ("[A]ll relevant evidence must be considered before a finding of complicated pneumoconiosis can be made.").

■ Where, as here, we are reviewing the OWCP's interpretation of its own regulations, the OWCP's reading, if reasonable, is entitled to " 'substantial deference' and will be sustained ' "unless it is plainly erroneous or inconsistent with the regulation." ' " *Adkins v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 878

F.2d 151, 152–153 (4th Cir.1989) (quoting *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987) (citation omitted)); *see also Shuff v. Cedar Coal Co.*, 967 F.2d 977, 979 (4th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993).

Lester challenges the OWCP's interpretation of § 921(c)(3) on the grounds that the Act actually allows for *alternative* means of proving complicated pneumoconiosis. In other words, if a claimant provides any evidence supporting a finding of complicated pneumoconiosis, the OWCP is prohibited from considering evidence to the contrary. Such a reading of the section, however, would run counter to the Act's general mandate that all relevant evidence should be considered in determining the validity of a claim. 30 U.S.C. § 923(b); *see also Bosco v. Twin Pines Coal Co.*, 892 F.2d 1473, 1479 (10th Cir.1989); *cf. Mullins Coal Co.*, 484 U.S. at 149–150, 108 S.Ct. at 435–36.

Moreover, Lester's proposed interpretation of § 921(c)(3) ignores Congress' purpose in creating it, namely to grant to the miner an irrebuttable presumption *not* because he has provided a single piece of relevant evidence, but because he has a "chronic dust disease of the lung," commonly known as complicated pneumoconiosis. To make such a determination, the OWCP necessarily must look at all of the relevant evidence presented.

The Supreme Court's *Mullins Coal* decision is highly analogous to the present case. In *Mullins*, the Court was interpreting § 203(a) of the Secretary of Labor's interim regulations which provided that a claimant who has engaged in coal mine employment for at least 10 years is entitled to an "interim presumption" of eligibility for disability benefits if he meets one of four medical requirements. The Court determined that the section did not mandate the invocation of the presumption whenever a single item of qualifying evidence was presented, but rather that

---

* The other doctors included: Dr. Garlapati, who treated Mr. Lester at death; Dr. Long, who reviewed medical evidence pertaining to the miner; and Dr. Korn, who examined Mr. Lester two months prior to his death. None were of the opinion that Mr. Lester suffered from anything greater than moderate anthracosis, which is included in the definition of simple pneumoconiosis.

the regulation allowed for one piece of qualifying evidence to be overcome by more reliable conflicting evidence. In reaching that conclusion, the Court relied on the plain language of the section in question as well as the purposes of the interim presumption. Here, as in *Mullins,* "if a miner is not actually suffering from the type of ailment with which Congress was concerned, there is no justification for presuming that that miner is entitled to benefits." 484 U.S. at 158, 108 S.Ct. at 439.

In essence, Lester asks us to extend the irrebuttable aspect of § 921(c)(3) to proof of complicated pneumoconiosis. Such a reading is contrary to both the language and intention of the Act. The Act grants claimants an irrebuttable presumption of causation upon the showing of complicated pneumoconiosis. The claimant retains the burden of proving the existence of the disease.

In light of the foregoing, the OWCP's interpretation of § 921(c)(3) is reasonable and is neither plainly erroneous nor inconsistent with the language of the regulations. Accordingly, we affirm the result reached by the Benefits Review Board.

*AFFIRMED.*