176 F.3d 382
 Hazel GRAY, Widow of Jack Gray, Petitioner,
v.
SLC COAL COMPANY; M & M Coal Company; Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 97-4427.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 28, 1999.
Decided May 24, 1999.
 
 John E. Anderson (argued and briefed), Cole, Cole & Anderson, Barbourville, KY, for Petitioner.
 Mark E. Solomons (argued and briefed), Laura Metcoff Klaus (briefed), Arter & Hadden, Washington, D.C., for Respondent.
 Joseph W. Bowman (briefed), Street, Street, Street, Scott & Bowman, Grundy, VA, for Respondent.
 Patricia Nece (briefed), Sarah M. Hurley (briefed), U.S. Department of Labor, Office of the Solicitor, Washington, D.C., for Respondent.
 Before: MARTIN, Chief Judge; RYAN and GILMAN, Circuit Judges.
 GILMAN, Circuit Judge.
 
 
 1
 Hazel Gray, the widow of Jack Gray, appeals the decision of the Department of Labor's Benefits Review Board denying her survivor's claim filed pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 901-45. Mrs. Gray's petition for survivor's benefits asserts that her husband suffered from complicated pneumoconiosis, the most severe stage of "black lung disease." Under the Act, persons found to have complicated pneumoconiosis receive the benefit of an irrebuttable presumption that they are totally disabled by the disease and that the disease caused their death. See 20 C.F.R. § 718.304 (1998). Persons with a milder form of the disease are unable to invoke this irrebuttable presumption, and they or their survivors must instead prove that pneumoconiosis actually caused their death or total disability in order to receive benefits under the Act. See 20 C.F.R. § 718.204 (1998).
 
 
 2
 Because Mr. Gray died of a self-inflicted gunshot wound, Mrs. Gray would not be eligible for benefits without the application of the irrebuttable presumption. An administrative law judge determined that Mr. Gray did not suffer from complicated pneumoconiosis, and was thus not entitled to the irrebuttable presumption. The Benefits Review Board affirmed, finding that the ALJ's determination was supported by substantial evidence.
 
 
 3
 Because the ALJ applied the correct standard and reached a conclusion that is supported by substantial evidence in the record, we AFFIRM the decision of the Benefits Review Board.
 
 I. BACKGROUND
 A. Factual and medical background
 
 4
 Jack Gray was born on July 17, 1936. He began working in coal mines at the age of 15, and continued to work there for 34 years. He married Hazel Gray on January 30, 1960. They remained married until his death in 1986.
 
 
 5
 Mr. Gray's chest x-rays, taken during 1974, indicated the presence of lung changes associated with coal workers' pneumoconiosis. At that time, however, an examining physician found his chest sounds to be normal. These x-rays were taken more than eight years before Mr.Gray began working for SLC Coal Company.
 
 
 6
 On November 22, 1985, Mr. Gray was injured by an electrical shock at work. He was treated by Dr. Matheny in connection with his injuries from this accident and for Parkinson's disease. Dr. Matheny found Mr. Gray to be permanently and totally disabled as a result of both the accident and the disease. Mr. Gray began receiving workers' compensation benefits based upon his disability.
 
 
 7
 In early 1986, he was x-rayed again. This time, Dr. Wright, who read the x-ray, found an opacity (a darkened area) nearly 5 centimeters in diameter on Mr. Gray's lung. Dr. Pongdee, who also read the x-ray, found that the x-ray was "consistent with coal workers' pneumoconiosis." But Mr. Gray's electrocardiogram and treadmill test, both administered by Dr. Gay, were normal.
 
 
 8
 On June 27, 1986, less than one year after his accident, Mr. Gray fatally shot himself in the head. The ensuing autopsy report concluded that the gunshot wound was the cause of Mr. Gray's death. According to Dr. Hunsaker, who performed the autopsy, Mr. Gray's lungs showed evidence of complicated pneumoconiosis. The doctor's report stated that the pneumoconiosis in Mr. Gray's lungs was the most advanced that he had seen in the course of four to five thousand autopsies in Kentucky. But Dr. Kleinerman, an expert in the field of pathology, examined the lung-tissue slides taken from the autopsy and disagreed with Dr. Hunsaker's conclusion. He found that Mr. Gray did not have any large opacities as found by Dr. Hunsaker, but only a series of smaller opacities (characteristic of simple pneumoconiosis) that were clustered closely together, making them appear to be a larger opacity.
 
 B. Procedural background
 
 9
 Mrs. Gray filed for federal black lung benefits on July 30, 1986. On September 1, 1988, Administrative Law Judge Eugene T. Burts issued a decision and order denying benefits. ALJ Burts found that there was significant x-ray and autopsy evidence that Mr. Gray suffered from complicated pneumoconiosis, but determined that the irrebuttable presumption set forth in 20 C.F.R. § 718.304 was not applicable because Mr. Gray's death was due to a gunshot wound.
 
 
 10
 On appeal, the Benefits Review Board vacated ALJ Burts's decision, holding that Mr. Gray's death from a self-inflicted gunshot wound would not rebut the presumption set forth in § 718.304, which by its own terms is irrebuttable. The Board remanded the case for a determination of whether the evidence as a whole supported the conclusion that Mr. Gray suffered from complicated pneumoconiosis.
 
 
 11
 ALJ Burts was no longer with the Office of Administrative Law Judges when Mr. Gray's case was remanded. Administrative Law Judge Ralph A. Romano was therefore assigned to hear the case. On May 4, 1993, ALJ Romano issued a decision and order denying benefits. In this order, the ALJ found that although the x-ray evidence showed the existence of complicated pneumoconiosis, the autopsy evidence did not. He explained that he had looked at the evidence as a whole in making his determination, and that he credited the autopsy evidence over the x-ray evidence. He further found that even if Mr. Gray did have complicated pneumoconiosis, it had reached its most severe stage before he began working for SLC. He based this conclusion upon the evidence that Mr. Gray's respiratory function was at its worst in 1974. The ALJ thus reasoned that SLC was not the responsible operator under the Act.
 
 
 12
 Mrs. Gray appealed, challenging the ALJ's finding that Mr. Gray did not have complicated pneumoconiosis. On June 22 1993, while the appeal was pending, she filed a request for modification based upon new evidence developed after the previous denial. The Benefits Review Board granted her request and remanded the claim for modification proceedings pursuant to 20 C.F.R. § 725.309 (1998).
 
 
 13
 On remand, M & M Coal Company was identified as an additional putative responsible operator. On March 26, 1996, ALJ Romano issued a Decision and Order Upon Modification Denying Benefits. In that Order, he explained again that although the x-rays contained evidence of complicated pneumoconiosis, and Dr. Hunsaker's autopsy report supported that conclusion, he was persuaded that Mr. Gray had only simple pneumoconiosis on the basis of Dr. Kleinerman's review of the autopsy slides. He stated that he placed greater reliance upon Dr. Kleinerman than upon the other physicians because Dr. Kleinerman is a leading authority in the field, upon whose methodology even Dr. Hunsaker had relied in making his determination. Because he found that complicated pneumoconiosis was not present, ALJ Romano did not determine whether SLC or M & M was the proper responsible operator under the Act.
 
 
 14
 Mrs. Gray appealed the March 26, 1996 decision to the Benefits Review Board, which affirmed the ALJ on May 27, 1997. The Board found that the ALJ's determination was supported by substantial evidence and in accordance with the law. It further found that the ALJ was within his discretion when he credited Dr. Kleinerman's opinion over the other medical evidence before him. On November 17, 1997, the Board denied Mrs. Gray's motion for reconsideration. Mrs. Gray then filed a timely petition for appeal to this court.
 
 II. ANALYSIS
 
 15
 A. Background on coal workers' pneumoconiosis
 
 
 16
 Coal workers' pneumoconiosis, known as "black lung disease," is caused by the long-term inhalation of coal dust. See, e.g., Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 6, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). It is generally diagnosed by x-rays showing opacities in the lungs, or by autopsy evidence. See id. at 7, 96 S.Ct. 2882. Pneumoconiosis is classified in two ways: "simple" and "complicated." See id. In its simple form, the disease is not necessarily disabling. See id. The complicated form, however, causes significant pulmonary impairment and respiratory disability. See id. Complicated pneumoconiosis is progressive, and often takes years to manifest itself. See id. at 7-8, 96 S.Ct. 2882.
 
 B. The applicable statutes and regulations
 
 17
 Section 411(c)(3) of the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 921(c)(3), provides as follows:
 
 
 18
 If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be.
 
 
 19
 The other pertinent provision in the Act is Section 413(b), 30 U.S.C. § 923(b), which directs that "[i]n determining the validity of claims under this part, all relevant evidence shall be considered...."
 
 
 20
 The irrebuttable presumption set forth in 30 U.S.C. § 921(c)(3) is reiterated in 20 C.F.R. § 718.304. A miner is considered to have died from pneumoconiosis "[w]here the presumption set forth at § 718.304 is applicable." § 718.205(c)(3). Another subsection of the same regulation provides that "survivors are not eligible for benefits where the miner's death was caused by a traumatic injury ... unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death." § 718.205(c)(4). Finally, 20 C.F.R. § 718.205(a) states that "[b]enefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis."
 
 
 21
 C. Mr. Gray's death from a self-inflicted gunshot wound would not preclude survivor's benefits if he were found to have suffered from complicated pneumoconiosis
 
 
 22
 SLC argues that even if Mr. Gray had complicated pneumoconiosis, 20 C.F.R. § 718.205(c)(4) would preclude Mrs. Gray from receiving survivor's benefits. On remand in 1991, however, the Benefits Review Board determined that the § 718.205(c)(4) regulation does not provide an exception to the irrebuttable presumption created by statute. In this appeal, the Director again argues that the § 718.304 presumption is irrebuttable. The Director's interpretation of regulations that he is responsible for administering is entitled to "substantial deference" unless it is plainly erroneous or inconsistent with the statute. See Shuff v. Cedar Coal Co., 967 F.2d 977, 979 (4th Cir.1992).
 
 
 23
 Furthermore, because both the statute (30 U.S.C. § 921) and its interpretive regulation (20 C.F.R. § 718.304) use the term "irrebuttable," the Director's reconciliation of § 718.205(c)(4) with the statute appears to be legally sound. See Wolf Creek Collieries v. Robinson, 872 F.2d 1264, 1267 (6th Cir.1989) (holding that the plain language of a statute prevails over an inconsistent regulation). We therefore agree with the Director's position on this issue.
 
 
 24
 D. The ALJ's determination that Mr. Gray did not have complicated pneumoconiosis is supported by substantial evidence in the record
 
 1. Standard of review
 
 25
 This court's role in reviewing an ALJ's decision is limited to determining whether substantial evidence supports the ALJ's conclusions. See Caney Creek Coal Co. v. Satterfield, 150 F.3d 568, 571 (6th Cir.1998). We should not re-weigh the evidence or substitute our judgment for that of the ALJ. See Wiley v. Consolidation Coal Co., 892 F.2d 498, 500 (6th Cir.1989).
 
 2. The evidence before the ALJ
 
 26
 In order to invoke the irrebuttable presumption that a miner's death was due to complicated pneumoconiosis, an eligible survivor may introduce x-ray evidence of opacities greater than one centimeter in diameter, autopsy or biopsy evidence of "massive lesions," or other medical evidence analogous to such opacities or lesions. See 20 C.F.R. § 718.304. The ALJ in this case considered physicians' reports, x-ray readings, and the autopsy report in making his determination.
 
 
 27
 The physicians did not diagnose, the ALJ did not find, and Mrs. Gray does not argue the existence of significant pulmonary or respiratory impairment, which would be relevant both to irrebuttably establishing death due to complicated pneumoconiosis and to establishing disability under other provisions of the Act. Although Mr. Gray had mild decreased breath sounds when examined in 1986, he had told Dr. Matheny, who examined him after his electric shock accident, that he was healthy until that accident.
 
 
 28
 Instead, the ALJ based his determination upon his weighing of x-ray and autopsy evidence. He noted that Dr. Baker, who examined and x-rayed Mr. Gray in 1986, had diagnosed him with complicated pneumoconiosis. The ALJ also considered the results of an autopsy performed by Dr. Hunsaker, who similarly concluded that Mr. Gray had complicated pneumoconiosis. Dr. Hunsaker stated that he found lesions that, if seen on an x-ray, would appear to be greater than one centimeter in diameter. He further stated that Mr. Gray's lungs showed evidence of "progressive massive fibrosis," and concluded that this ailment was equivalent to the term "massive lesions" in 20 C.F.R. § 718.304. In his opinion, Mr. Gray's pneumoconiosis was the most advanced he had seen in four to five thousand autopsies in Kentucky.
 
 
 29
 But the ALJ also had before him the testimony of Dr. Kleinerman, a renowned pathologist who chaired a committee that formulated the diagnostic criteria for complicated pneumoconiosis. Dr. Kleinerman examined the lung-tissue slides from Mr. Gray's autopsy. He reached a different conclusion from Dr. Hunsaker, finding that there were no "massive lesions" as described in 20 C.F.R. § 718.304. His opinion was as follows:
 
 
 30
 Dr. Hunsaker's diagnosis of "coalworkers pneumoconiosis with early progressive massive fibrosis" is in my opinion simply not correct. The reasons for which I believed that his diagnosis is not correct is that the areas of silicotic nodules, which he presumes to be "early progressive massive fibrosis" are only 1.5 cm. in greatest dimension on the slide which I reviewed. This size is insufficient for a diagnosis of complicated pneumoconiosis. The more important reason for my opinion is that the pathologic changes are characterized by a number of simple silicotic nodules which are adjacent one to the other. However, these lesions are nodules of simple silicosis and do not have the pathologic changes characteristic of complicated coalworkers pneumoconiosis or conglomerate silicosis.
 
 
 31
 The ALJ gave more weight to the autopsy findings than to the x-ray readings because they are more reliable and allow for more complete examination of the lungs. See Terlip v. Director, Office of Worker's Compensation Programs, 8 BLR 1-363 (1985). He also credited Dr. Kleinerman's conclusions over Dr. Hunsaker's because of the former's superior qualifications. ALJ's may evaluate the relative merits of conflicting physicians' opinions and choose to credit one opinion over the other. See, e.g., Adams v. Peabody Coal Co., 816 F.2d 1116, 1120-21 (6th Cir.1987). As the Benefits Review Board noted, Dr. Hunsaker acknowledged that he used criteria developed by Dr. Kleinerman in making his diagnosis. Because even the physician upon whose opinion Mrs. Gray relies acknowledged Dr. Kleinerman's expertise and superior qualifications, the ALJ was within his discretion in according more weight to Dr. Kleinerman's opinion.
 
 
 32
 E. X-ray evidence of opacities larger than one centimeter does not automatically trigger the irrebuttable presumption when conflicting evidence exists
 
 
 33
 Mrs. Gray argues that the ALJ's conclusion was incorrect as a matter of law because there was x-ray evidence of opacities greater than one centimeter in diameter. The irrebuttable presumption in 20 C.F.R. § 718.304, however, is not automatically triggered by such evidence when conflicting evidence is presented that rebuts the x-ray readings. Rather, the statute directs that the ALJ must consider "all relevant evidence." See 30 U.S.C. § 923(b).
 
 1. The language of the statute
 
 34
 We believe that it would be inconsistent with the plain language of the Federal Coal Mine Health and Safety Act to invoke the irrebuttable presumption whenever medical testimony based upon x-rays indicates opacities of one centimeter or greater, without taking into account any conflicting evidence. In other words, the existence of one piece of evidence should not exclude contrary evidence from consideration. The Act states, in relevant part, that "[t]here is an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis ... if such miner is suffering or suffered from a chronic dust disease of the lung ... [diagnosed by means of the three enumerated methods listed in the statute]." 30 U.S.C. § 921(c)(3) (emphasis added). The irrebuttable presumption does not apply until the presence of the chronic dust disease is established by evidence satisfactory to the ALJ. (The "chronic dust disease" to which the regulation refers is commonly known as complicated pneumoconiosis. See Lester v. Director, Office of Workers' Compensation Programs, 993 F.2d 1143, 1145 (4th Cir.1993)).
 
 
 35
 The Fourth Circuit emphasized this point about the totality of the evidence in Lester. In that case, Mr. Lester's widow presented x-ray evidence of complicated pneumoconiosis pursuant to 30 U.S.C. § 921(c)(3)(A). The autopsy evidence, however, indicated that he had simple pneumoconiosis. See id. at 1144. In determining that one piece of relevant evidence cannot be considered in a vacuum, the court opined that Congress intended "to grant to the miner an irrebuttable presumption not because he has provided a single piece of relevant evidence, but because he has a 'chronic dust disease of the lung,' commonly known as complicated pneumoconiosis." Id. at 1145. The same factual circumstances are present in the case before us.
 
 
 36
 2. Gray's reading of the Act is contrary to the statutory scheme
 
 
 37
 We read the disjunctive "or" in § 921 to mean that a miner need not present all three types of evidence in order to qualify for benefits under the Act. Any of the three types of proof is sufficient, in the absence of other evidence, to invoke the irrebuttable presumption, but none is conclusive if outweighed by contrary evidence. The disjunctive therefore serves to give miners flexibility in proving their claims, but does not establish three separate and independent irrebuttable presumptions.
 
 
 38
 Mandating that an ALJ ignore autopsy and other relevant medical evidence if the x-rays show opacities of greater than one centimeter in diameter would doubtless have the effect of forcing operators to compensate the families of miners who did not, in fact, have complicated pneumoconiosis. The following hypothetical demonstrates the potential for this unintended consequence: A miner has chest x-rays in connection with treatment for emphysema or some other lung disease. The x-rays are difficult to read, but indicate opacities of greater than one centimeter in diameter. A radiologist states that the x-rays show opacities of that size, and opines that they are statutorily sufficient to demonstrate complicated pneumoconiosis. On the other hand, the miner's two treating physicians state that the miner has no respiratory symptoms and that pulmonary and blood studies are negative. They are firm in their conviction that the miner does not suffer from complicated pneumoconiosis. Shortly after the x-rays are taken, the miner dies in an automobile accident. Based upon an autopsy, three consulting pathologists write consistent reports refuting the presence of complicated pneumoconiosis, and posit that the opacities on the x-ray are not massive lesions. The overall weight of the evidence clearly establishes that the miner does not have complicated pneumoconiosis. But because the irrebuttable presumption in § 921 would be triggered by the x-ray testimony alone, the ALJ would be precluded from weighing all relevant evidence, and would thus have to award benefits. This irrational result was surely not what Congress intended when it established the irrebuttable presumption for miners who in fact have complicated pneumoconiosis.
 
 
 39
 3. The meaning of "all relevant evidence"
 
 
 40
 We find it significant that 30 U.S.C. § 923(b) directs that "all relevant evidence" be considered. Mrs. Gray suggests that § 923 directs the ALJ to weigh all relevant evidence within each category set forth in § 921, but not to weigh evidence from different categories (e.g., x-ray vs. autopsy) against one another. We believe that this is a strained reading of § 923 because the "all relevant evidence" language is not modified by "x-ray" or "of the same category." Instead, the "all relevant evidence" means just that--all evidence that assists the ALJ in determining whether a miner suffers from complicated pneumoconiosis. To the extent that there is any ambiguity in the meaning of § 921, we find that § 923 resolves the ambiguity in favor of our reading. In other words, we place more weight upon the clear meaning of § 923 than upon the claimed ambiguity of the disjunctive "or" in § 921.
 
 
 41
 F. The one-centimeter standard for x-ray evidence does not apply to autopsy evidence
 
 
 42
 Finally, Mrs. Gray objects to the use of Dr. Kleinerman's opinion because she believes that he imposed a higher standard for diagnosing complicated pneumoconiosis than is dictated by 20 C.F.R. § 718.304. Mrs. Gray's regulatory interpretation, however, would give x-ray evidence greater weight than other types of evidence by focusing upon the former's seductively objective standard, even though x-rays are generally recognized as the least accurate method of correctly diagnosing complicated pneumoconiosis. See Usery v. Turner Elkhorn Mining Co., 428 U.S. at 7, 96 S.Ct. 2882. This would have the effect of precluding ALJs from considering all evidence that bears upon the question of whether a miner suffered from complicated pneumoconiosis. For this reason, we decline to adopt Mrs. Gray's interpretation.
 
 
 43
 The one-centimeter standard applicable to x-rays simply does not apply to autopsy evidence. See Riddle v. Director, Office of Worker's Compensation Programs, 1995 WL 715303 (4th Cir.1995) (per curiam), where the court explained:
 
 
 44
 Dr. Hansbarger's finding of a fibrotic nodule measuring 1.8 centimeters in diameter was insufficient to invoke the irrebuttable presumption found at § 718.304. The regulations provide that an opacity, yielded by an X-ray, of more than one centimeter, is sufficient to establish "complicated pneumoconiosis" and invoke the irrebuttable presumption. See § 718.304(a). The nodule in this case, however, appeared by autopsy. Under such circumstances, the nodule could only justify invocation of the presumption if a physician provided an opinion that such a nodule would produce an opacity of greater than one centimeter if viewed by x-ray, or an opinion that such a nodule constitutes a "massive lesion."
 
 
 45
 Unpublished op. at 4 (emphasis in original). We agree with the Fourth Circuit's reasoning. In Mr. Gray's case, Dr. Kleinerman testified that the lesions on the lung-tissue slides would not appear as opacities of greater than one centimeter on an x-ray. He also opined that the nodules on the lung-tissue slides were not the "massive lesions" described in the regulation.
 
 
 46
 Both the Benefits Review Board and the Director concluded that Dr. Kleinerman's diagnosis was in keeping with the regulation. As noted above, the Director's interpretation of the regulations merits substantial deference from this court. Based upon their knowledge of the standards applicable to autopsy evidence, the Board and the Director concluded that Dr. Kleinerman had applied the correct legal standard in determining that Mr. Gray did not have complicated pneumoconiosis. We find no basis to disturb this conclusion. Mrs. Gray's argument that the ALJ erred as a matter of law in crediting his testimony is therefore without merit.
 
 III. CONCLUSION
 
 47
 For all of the reasons stated above, we AFFIRM the decision of the Benefits Review Board.