NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0365n.06

No. 08-3909

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 26, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| SAMMY JOE MAYNARD, | ) | |
| | ) | |
| *Petitioner*, | ) | ON APPEAL FROM THE |
| | ) | U N I T E D   S T A T E S |
| v. | ) | DEPARTMENT OF LABOR |
| | ) | BENEFITS REVIEW BOARD |
| EASTERN COAL COMPANY; DIRECTOR, | ) | |
| OFFICE OF WORKERS' COMPENSATION | ) | **O P I N I O N** |
| PROGRAMS; UNITED STATES | ) | |
| DEPARTMENT OF LABOR, | ) | |
| | ) | |
| *Respondents*. | ) | |

BEFORE:    BATCHELDER and COLE, Circuit Judges; LAWSON, District Judge.[*]

**COLE, Circuit Judge.**  Sammy Joe Maynard, a former coal miner employed by Eastern

Coal Company ("Eastern Coal"), petitions for review of a decision by the Benefits Review Board

("BRB") of the United States Department of Labor upholding the decision by an administrative law

judge ("ALJ") denying him benefits under the Federal Coal Mine Health and Safety Act of 1969, as

amended by the Black Lung Benefits Act of 1972 and the Black Lung Benefits Reform Act of 1977,

30 U.S.C. § 901 et seq. (the "Act").  For the following reasons, we **DENY** Maynard's petition for

review.

---

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.  BACKGROUND

### A.      Factual and procedural background

This claim has a lengthy procedural history dating back more than twenty years.  Maynard filed his claim for black lung benefits on April 6, 1987.  He worked for Eastern Coal in a mine for at least thirteen-and-one-third years.  Maynard was awarded black lung benefits by ALJ Richard E. Huddleston three separate times; each time, Eastern Coal appealed, and the BRB found fault with Judge Huddleston's analysis, vacated the award, and remanded.  When the case was remanded the third time, it was assigned to ALJ Stuart A. Levin, who denied benefits.  The BRB affirmed.

At each stage of the proceedings, the central issue has been whether the large body of medical evidence—twelve x-rays taken over a span of many years and interpreted by more than thirty doctors of varying qualifications, a CT scan, pulmonary function studies, arterial blood gas studies, and physician testimony and reports—establishes that Maynard suffers from complicated coal workers' pneumoconiosis ("CWP").  We have described CWP as follows:

> Coal workers' pneumoconiosis, known as "black lung disease," is caused by the long-term inhalation of coal dust.  *See, e.g.*, *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 6 [] (1976).  It is generally diagnosed by x-rays showing opacities in the lungs, or by autopsy evidence.  *See id.* at 7.  Pneumoconiosis is classified in two ways: "simple" and "complicated." *See id.*  In its simple form, the disease is not necessarily disabling.  *See id.*  The complicated form, however, causes significant pulmonary impairment and respiratory disability.  *See id.*  Complicated pneumoconiosis is progressive, and often takes years to manifest itself.  *See id.* at 7-8.

*Gray v. SLC Coal Co.*, 176 F.3d 382, 386 (6th Cir. 1999).  Under the Act, a miner who is totally disabled as a result of CWP is entitled to payment of benefits.  *See* 30 U.S.C. § 921(a).  A miner who establishes that he has complicated CWP is entitled to an irrebuttable presumption of total disability.

*See* 30 U.S.C. § 921(c)(3). It is undisputed that Maynard cannot independently establish total disability and therefore must establish complicated CWP in order to receive benefits.

While all of the physicians who opined in this case agreed that Maynard's x-rays showed presence of significant abnormalities in his lungs, some believed that this indicated simple CWP only, some believed it indicated complicated CWP, and some believed it was not CWP at all, but was the result of scarring from a prior, healed granulomatous disease, such as tuberculosis, sarcoidosis, or histoplasmosis.

**B.      The ALJ's decision**

Judge Levin noted that the BRB previously had affirmed Judge Huddleston's conclusion that, based on the x-ray evidence, Maynard had established at least simple CWP. Judge Levin reviewed de novo the voluminous x-ray readings to determine whether they also supported a finding of complicated CWP. He concluded that they did, but he also noted that x-ray evidence is the "least accurate method" of diagnosing CWP. (Joint Appendix ("JA") 506 (quoting *Gray*, 176 F.3d at 390).) Judge Levin proceeded to analyze the medical reports of ten physicians opining on Maynard's condition, and he also noted that the opinions of eight physicians previously had been found not to affirmatively support a finding of complicated CWP. After assigning greater or less weight to each of the ten physicians' reports based on a number of factors, Judge Levin found that the medical opinions weighed against a finding of complicated CWP. The doctors' conclusions in the opinions were as follows:

•        Only Drs. Younes and Nadorra affirmatively opined that Maynard suffers from complicated CWP.

- Dr. Cooper diagnosed simple CWP, but this was based on Maynard's unconfirmed lay statement that he previously had tested negatively for tuberculosis.

- Drs. Abernathy and Lane diagnosed probable CWP without specifying whether it was simple or complicated, but both noted the possibility of healed granulomatous disease.

- Dr. Harrison opined that he could not definitively rule out CWP but that he believed Maynard's abnormal x-rays more likely showed healed granulomatous disease.

- Drs. Vuskovich, Rosenberg, Repsher, and Broudy all opined that Maynard did not have CWP at all and that the x-rays showed prior granulomatous disease.

Next, Judge Levin considered three physicians' readings of the CT scan of Maynard's lungs, noting that CT scans are "arguably the most sophisticated and sensitive test available." (JA 509.) Drs. Rosenberg, Repsher, and Broudy, the only doctors to analyze the CT scan, all read it as negative for both simple and complicated CWP, consistent with their readings of Maynard's x-rays. Balancing all of the foregoing evidence, and noting that, although the x-ray evidence supported a finding of complicated CWP, "[m]any physicians opined . . . that determining the presence of x-ray abnormalities is only the first step in analyzing the Claimant's ailment," (JA 509), Judge Levin concluded that Maynard had not established presence of complicated CWP and thus was not entitled to benefits under the Act. The BRB affirmed.

## II. ANALYSIS

### A. Applicable statutes and regulation

Section 411(c)(3) of the Act provides, in relevant part:

If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram [i.e., x-ray], yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by

biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis[.]

30 U.S.C. § 921(c)(3). The enabling regulation for section 411(c)(3) similarly provides that the irrebuttable presumption of total disability, entitling a miner to benefits, may be established through chest x-ray, biopsy or autopsy, or other means of diagnosis in accordance with acceptable medical procedures. *See* 20 C.F.R. § 718.304(a)-(c). Section 413(b) of the Act directs that "in determining the validity of claims under this part, all relevant evidence shall be considered . . . ." 30 U.S.C. § 923(b). We have held that, although the statute and regulation list the three methods of establishing complicated CWP in the disjunctive, and although any of the three may be sufficient to support a finding of complicated CWP, an ALJ must take into account all of the relevant evidence and determine whether the preponderance of the evidence supports a finding of complicated CWP. *Gray*, 176 F.3d at 388-90.

**B.     Standard of review**

"[W]e review the Board's decision to ensure that it 'did not commit a legal error or exceed its statutory scope of review of the ALJ's findings.'" *Caney Creek Coal Co. v. Satterfield*, 150 F.3d 568, 571 (6th Cir. 1998) (quoting *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 901 (6th Cir. 1996). "Our review of the Board's legal conclusions is plenary; the Board may set aside an ALJ's factual findings only if they are not supported by substantial evidence." *Id*. (internal citations omitted). Therefore, we inquire whether substantial evidence supports the ALJ's conclusions. *See Gray*, 176 F.3d at 387. "We should not re-weigh the evidence or substitute our judgment for that

of the ALJ." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wolf Creek Collieries v. Dir., OWCP*, 298 F.3d 511, 519 (6th Cir. 2002) (internal quotation marks omitted).

**C.      The ALJ's decision is supported by substantial evidence**

*1.      The ALJ was entitled to rely on doctors who did not diagnose simple CWP*

As mentioned above, in one of its earlier opinions the BRB affirmed Judge Huddleston's conclusion that the x-ray evidence supported a finding of, at the very least, simple CWP. On appeal, Maynard argues that presence of simple CWP became law of the case, making it improper for Judge Levin to credit the opinions of physicians who had not diagnosed Maynard with simple CWP.

Despite its statement that the x-ray evidence supported a finding of simple CWP, the BRB's remand in its May 20, 1998 opinion specifically directed the ALJ to consider the notations and reports of physicians who believed that the abnormalities in Maynard's lungs resulted from healed granulomatous disease. Thus, the BRB's ruling not only permitted the ALJ to consider such opinions but required him to do so. Furthermore, Judge Huddleston's conclusion that simple CWP was present was based only on x-ray evidence (he purported to rely on blood-gas studies, as well, but the BRB rejected his conclusions), and the BRB found that Judge Huddleston had erred in failing to consider other medical-opinion evidence. The BRB clearly did not intend to foreclose Judge Levin from taking into account the opinions of doctors who believed that granulomatous disease accounted for the abnormalities on Maynard's x-rays.

Although Judge Levin was not required to discredit doctors who opined that Maynard did not have CWP, Judge Levin did try to give effect to the BRB's affirmance of the presence of simple

CWP by reducing his reliance on certain doctors who failed to diagnose that condition. The manner in which he reduced his reliance on certain doctors but not others appears to have been inconsistent. For example, Judge Levin discredited Dr. Vuskovich's medical opinion because he had not diagnosed simple CWP, stating "I give little weight to his opinion . . . because the Board has found that Claimant does have simple pneumoconiosis, a condition related to coal mine employment which Dr. Vuskovich was unable to detect." (JA 507.) However, Judge Levin failed to similarly discount the medical opinions of other doctors who had also concluded that simple CWP was not present. Eastern Coal has not provided any explanation for Judge Levin's apparent inconsistency, and we can discern none, but any error is harmless, because, as described below, substantial evidence supports Judge Levin's ultimate conclusion.

Four doctors opined that the abnormalities on Maynard's x-rays were healed granulomatous disease. With respect to Dr. Rosenberg, Judge Levin noted that he is a board-certified internist and pulmonologist who based his opinion on review of a large volume of medical evidence collected over a fifteen-year period. Dr. Rosenberg opined that healed granulomatous disease accounted for the abnormalities in Maynard's x-rays, stating that "the presence of upper lobe abnormalities without a background of small nodular opacities made the existence of pneumoconiosis improbable." (JA 507.) Judge Levin gave the opinion "great weight," noting that it was based on x-rays, the CT scan, and the reports of other physicians. (JA 507.)

Similarly, Judge Levin noted that Dr. Harrison had physically examined Maynard, examined his medical history and x-ray results, and "opined that the Miner's abnormal x-ray may not be coal workers' pneumoconiosis but also could represent tuberculosis or sarcoidosis," and the "hilar

adenopathy seen on the x-ray was more consistent with granulomatous disease than pneumoconiosis." (JA 506.) Judge Levin found Dr. Harrison's report to be well-reasoned.

Dr. Repsher, who performed a review of all of the medical records, opinions, and x-rays, concluded, like Dr. Rosenberg, that the abnormalities in the x-rays were due to granulomatous disease, not CWP. Judge Levin stated "[a]lthough Dr. Repsher failed to diagnose even simple pneumoconiosis, he does discuss the conglomerated lesions in claimant's lungs, and accordingly I accord his opinion against a finding of complicated pneumoconiosis moderate weight." (JA 508.) Dr. Broudy reached a very similar conclusion, and Judge Levin stated that "[a]lthough Dr. Broudy failed to diagnose even simple pneumoconiosis, he does discuss the lesions in claimant's lungs, and accordingly I accord his opinion against a finding of complicated pneumoconiosis moderate weight." (JA 508.)

A number of other physicians in the record recognized prior granulomatous disease as a possible explanation for Maynard's abnormal x-rays. Together, these opinions constitute substantial evidence supporting the ALJ's ultimate finding that Maynard did not establish presence of complicated CWP. Only two physicians affirmatively opined that Maynard had complicated CWP. Judge Levin found that the opinions of the other physicians outweighed that evidence. We may not re-weigh this evidence or substitute our judgment for that of the ALJ. *See Gray*, 176 F.3d at 387.

2. *The ALJ properly considered the CT scan evidence*

Maynard claims it was error for Judge Levin to consider the CT scan readings by Drs. Rosenberg, Repsher, and Broudy, which interpreted the CT scan as showing neither simple nor complicated CWP, since Judge Huddleston's finding of simple CWP had been affirmed by the BRB.

As we have already noted, the ALJ was required to consider all of the relevant evidence. Furthermore, the BRB specifically directed the ALJ to consider the impact of several readings of the CT scan by doctors who found that it showed neither simple nor complicated CWP. Therefore, we cannot agree with Maynard that the BRB's prior findings should have precluded Judge Levin from considering the CT scan evidence.

Maynard also claims that the ALJ was required to compare the qualifications of the CT scan readers to the qualifications of the x-ray readers. Only three doctors interpreted the CT scan evidence, so those were the only three readings on which the ALJ could base his view of the CT scan evidence. The fact that these three doctors, who were qualified radiographic readers, were not as highly qualified as some of the other readers who did not view the CT scan evidence does not mean that the ALJ erred by relying on their CT scan readings.

> 3. *The ALJ's discounting of Dr. Younes's opinion because it relied on an incorrect smoking history was not reversible error*

Maynard generally informed the physicians who evaluated him that he had smoked a pack of cigarettes per day for approximately twenty years. However, Maynard told Dr. Younes that he had never been a smoker. As a result, the ALJ found Dr. Younes's opinion that Maynard suffered from complicated CWP worthy of less weight. Maynard argues that this was error because "[a] claimant's smoking history has no relevance to the question of whether clinical pneumoconiosis is present." Maynard cites a Third Circuit case, *Wisniewski v. Director*, 929 F.2d 952, 959 (3d Cir. 1991), which held: "the ALJ erred in considering Mr. Wisniewski's smoking history as relevant to causation in this case. Because smoking cannot cause the radiologic impressions characteristic of

pneumoconiosis, it is not an alternate exposure capable of contributing to a miner's clinical pneumoconiosis."

Maynard may be correct that smoking history does not affect x-ray images, but he has not provided any authority—medical or otherwise—stating that smoking history is entirely irrelevant to a physician's diagnosis of complicated CWP, which relies on other information about the patient to aid the doctor's interpretation of what appears in the x-ray. In any case, even if Judge Levin erred in discounting Dr. Younes's opinion, substantial evidence still supports Judge Levin's ultimate conclusion. *See, e.g.*, *Wisniewski*, 929 F.2d at 959 (finding ALJ's conclusion supported by substantial evidence despite erroneous discounting of opinion that relied on inaccurate smoking history).

### 4. The ALJ did not err in his weighing of the opinions of treating physicians

Finally, Maynard argues that Judge Levin failed to give adequate weight to the opinions of Maynard's treating physicians, Drs. Nadorra and Younes. Treating physicians are not entitled to automatic deference in black lung cases but may be given greater deference if their extended relationship with the patient makes their opinions more persuasive in the context of a given case. *See Eastover Mining Co. v. Williams*, 338 F.3d 501, 511-13 (6th Cir. 2003) (holding that there is no treating-physician rule, but the opinions of treating physicians may be entitled to more deference based on their power to persuade). Judge Levin noted that Dr. Nadorra, who diagnosed Maynard with complicated CWP in 2000, offered no basis for that diagnosis, presented no specialty credentials, and may have relied on an inaccurate smoking history. These are valid reasons for discounting Dr. Nadorra's opinion. Judge Levin's only explanation for discounting Dr. Younes's

opinion was his reliance on an inaccurate smoking history. Although a history of smoking apparently has no direct relation to the diagnosis of CWP, a mistake as to such a basic historical fact by a physician treating a pulmonary ailment may cast doubt on the level of Dr. Younes's familiarity with Maynard and may be cause to undermine the reliability of his diagnosis. As discussed above, Maynard has not established that this discounting was erroneous, and even if it had been, Judge Levin's ultimate conclusion would still be supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, we **DENY** Maynard's petition for review and **AFFIRM** the decision of the BRB.