**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0487n.06

**No. 12-3872**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 15, 2013*
DEBORAH S. HUNT, Clerk

WHITAKER COAL CORPORATION,
**self-insured through Sun Coal Corporation,**

      **Petitioner,**

v.

JAMES OSBORNE and DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

      **Respondents.**

                                            /

ON PETITION FOR REVIEW OF
AN ORDER OF THE BENEFITS
REVIEW BOARD

BEFORE:    CLAY and COOK, Circuit Judges; and OLIVER, District Judge.[*]

    **CLAY, Circuit Judge.**  Respondent James Osborne, a retired coal miner, filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, with the United States Department of Labor's Office of Workers' Compensation Programs. The administrative law judge found that Respondent was entitled to benefits under the Act, and the Benefits Review Board affirmed that decision. Petitioner Whitaker Coal Corporation petitions this Court for review of the

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Board's decision. For the following reasons, we **DENY** the petition for review, thereby affirming the award of benefits to Respondent.

## BACKGROUND

Respondent James Osborne worked in coal mines for thirty-three years, nine of them as an employee of Petitioner Whitaker Coal Corporation. On August 2, 1994, Respondent filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, with Respondent Director, Office of Workers' Compensation Programs (the "Director"). The district officer recommended denying benefits. After a hearing before an administrative law judge ("ALJ"), it was determined that although Respondent suffered from simple pneumoconiosis, Respondent failed to establish that he was totally disabled because of that condition. Respondent was therefore denied benefits.

Respondent filed a second claim for benefits on April 15, 2008; it is this claim that forms the basis for this appeal. On this claim, the district officer recommended awarding benefits, and the matter was referred to an ALJ. At a hearing on May 11, 2010, the ALJ received all of the evidence adduced since the denial of Respondent's first claim. This evidence consisted of chest x-rays, CT scans, pulmonary function studies, arterial blood gas studies, and several medical opinions.

In his November 29, 2010 decision awarding Respondent benefits, the ALJ discussed and weighed the evidence submitted. The medical evidence and opinions were in agreement that Respondent has a large mass in the upper right lobe of his lung, but there was significant disagreement about the cause of that mass and other nodules in Respondent's lungs. ALJ first considered the x-ray evidence. Of the sixteen chest x-rays performed, only four classified the mass

on the ILO scale,[1] with Dr. Paul Wheeler (who performed two x-rays) finding no pneumoconiosis, Dr. John C. Scatarige finding simple pneumoconiosis, and Dr. Abdi Vaezy finding complicated pneumoconiosis. The unclassified x-rays were also split as to the diagnosis with Drs. Basim W. Atoum, Mahender Pampati, Ashok Patel, and Rodney G. Stinett finding the results consistent with pneumoconiosis, Drs. Wheeler and Scatarige viewing them as evincing a conglomerate granulomatous disease such as histoplasmosis or tuberculosis, and Dr. John M. Harrison interpreting the results as a sign of complicated pneumoconiosis.

The ALJ next detailed Respondent's CT scans. Again, the CT scans revealed a difference of opinion about Respondent's condition. Dr. Patel thought that the nodules were "consistent with pneumoconiosis," but he did not clarify whether that was simple or complicated pneumoconiosis. (App. at 20–21.) Dr. Wheeler thought that the CT scans showed that the masses were not related to pneumoconiosis. A third doctor, Dr. Dhiren Desai, did not offer a definitive diagnosis based on his CT scan. After describing pulmonary function studies and arterial blood gas studies done on Respondent, the ALJ turned to the "narrative medical evidence" (i.e., the physician's opinions). The most relevant of these opinions are those of Drs. Harrison (Respondent's expert); A. Dahhan (Petitioner's expert); and Vaezy (Director's independent examiner).

---

[1]The ILO (International Labor Office) publishes guidelines for the classification of chest x-rays of pneumoconiosis. *See* Int'l Labor Office, Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses (2000), *available at* http://www.ilo.org/wcmsp5/groups/public/---ed_protect/---protrav/---safework/documents/publication/wcms_108568.pdf. Pneumoconiosis may be established with a chest x-ray that is "classified as Category 1, 2, 3, A, B, or C, according to [these guidelines]," 20 C.F.R. § 718.102(b), with categories 1, 2, and 3 indicating simple pneumoconiosis and categories A, B, and C indicating complicated pneumoconiosis. *Gale Coal Co. v. Hamilton*, 173 F.3d 855, at *1 (6th Cir. 1999) (table decision).

Dr. Harrison, a Board-certified internist and pulmonologist, examined Respondent in May 2004 at the request of Respondent's treating physician after previous x-rays and scans were inconclusive as to the existence of pneumoconiosis. Dr. Harrison did a full review of Respondent's family, medical, and social histories, ran his own x-ray, and comparatively reviewed all prior x-rays and scans in Respondent's file. On his x-ray, Dr. Harrison noted "diffuse reticular nodular disease most prominent in the upper 2/3 of both lung zones" and "conglomerate changes in the apices where granulomatous disease appears to have consolidated." (App. at 54.) On the whole, Dr. Harrison diagnosed Respondent with "[c]omplicated coal workers' pneumoconiosis," which he stated was "easy to see . . . watching the progression of his chest x-rays from '98 until recently that this has gone from simple coal workers' pneumoconiosis to complicated coal workers' pneumoconiosis." (*Id.*)

Dr. Dahhan, also a Board-certified internist and pulmonologist, examined Respondent in September 2008 at Petitioner's request. As Dr. Harrison had, Dr. Dahhan obtained a full medical history and his examination also included a pulmonary function test. Dr. Dahhan interpreted a previously-run scan consistent with Dr. Scatarige, a Board-certified radiologist and certified B-reader[2]: "no large opacities . . . consistent with histoplasmosis or tuberculosis rather than pneumoconiosis." (*Id.* at 28.) This diagnosis, Dr. Dahhan opined, was confirmed by Respondent's normal pulmonary function studies. Overall, Dr. Dahhan concluded that Respondent did not have complicated pneumoconiosis.

---

[2] A "B-reader" is "a physician who has demonstrated proficiency in evaluating chest [x-rays] and in the use of the [ILO scale] for interpreting chest [x-rays] for pneumoconiosis and other diseases." 20 C.F.R. § 718.202(a)(1)(ii)(E); *see also Woodward v. Director, OWCP*, 991 F.2d 314, 316 n.4 (6th Cir. 1993).

Third, Dr. Vaezy, a Board-certified internist and pulmonologist as well as a certified B-reader, examined Respondent in June 2008 at the Director's request to allow the Director to fulfill its obligation under 30 U.S.C. § 923(b). Dr. Vaezy too conducted an x-ray and categorized Respondent's mass as a category C under the ILO guidelines, indicating complicated pneumoconiosis. Although Dr. Vaezy noted that Respondent's pulmonary function results were "borderline normal," Dr. Vaezy diagnosed Respondent with complicated pneumoconiosis. (App. at 28.)

After evaluating the medical evidence, the ALJ concluded that Respondent was entitled to the irrebuttable presumption of entitlement to benefits embodied in 30 U.S.C. § 921(c)(3) and 20 C.F.R. § 718.304 because Respondent had proven that he suffered from complicated pneumoconiosis arising out of coal mine employment. Central to the ALJ's conclusion were the medical opinions. In weighing the opinions of Drs. Harrison, Dahhan, and Vaezy, the ALJ was "struck by the thoroughness" of Dr. Harrison's, noting that only Dr. Harrison "obtained information regarding the [Respondent's] negative skin test for tuberculosis, which is significant given the fact that [two non-examining doctors] suggest[ed] that the x-ray [masses] may [have] be[en] due to tuberculosis." (*Id.* at 36.) Further, the ALJ stated that Dr. Harrison, "unlike Drs. Vaezy and Dahhan, reviewed a series of x-ray films for comparison purposes, and found a clear progression of the disease process." (*Id.*) The ALJ found that both Dr. Vaezy's and Dr. Dahhan's opinions were entitled to weight but that the "weight of the medical-opinion evidence, when viewed independently, supports a finding of complicated pneumoconiosis based upon the opinions of Drs. Harrison and Vaezy." (*Id.* at 38.) The

ALJ found that his conclusion about the weight of the medical-opinion evidence was buttressed by the x-ray evidence, CT scans, and Respondent's employment and medical histories.

Petitioner appealed the ALJ's decision to the United States Department of Labor Benefits Review Board (the "Board"). Before the Board, Petitioner argued, as it does here, that "since the [ALJ] found that the x-ray and CT scan evidence was insufficient to establish complicated pneumoconiosis, he erred in crediting the medical opinion evidence, which relied, in part, on x-ray and CT scan evidence to find complicated pneumoconiosis established." (App. at 9.) In rejecting this argument, the Board found that the ALJ "properly credited the opinions of Dr. Harrison and Dr. Vaezy, over the contrary opinion of Dr. Dahhan, because he found their opinions to be better reasoned and documented." (*Id.*) Therefore, it affirmed the ALJ's determination that Respondent had established § 921(c)'s irrebuttable presumption of totally disabling pneumoconiosis.

**DISCUSSION**

A.      **Standard of Review**

While this Court reviews the legal conclusions of the Board *de novo*, we will affirm the ALJ's decision so long as that decision is supported by substantial evidence. *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 477 (6th Cir. 2011); *see also Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003) ("When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, our scope of review is exceedingly narrow."). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morrison*, 644 F.3d at 478 (internal quotation marks omitted). "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal

6

standard or there is insufficient evidence to support the ALJ's finding." *Id*. (internal quotation marks omitted).

## B.    Statutory and Regulatory Framework

The Black Lung Benefits Act compensates coal miners who can prove that they are (1) totally disabled (2) by pneumoconiosis (3) arising out of coal mine employment. *See* 30 U.S.C. § 901(a); 20 C.F.R. § 725.201(a). Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). Pneumoconiosis "is customarily classified as 'simple' or 'complicated.'" *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7 (1976). If the claimant is "shown by x-ray or other clinical evidence to be afflicted with complicated pneumoconiosis[, he] is 'irrebuttably presumed' to be totally disabled due to pneumoconiosis." *Id.* at 10–11. Under current regulations that irrebuttable presumption can be established (A) by a chest X-ray that yields one or more large opacities (greater than one centimeter in diameter) that are classified as a Category A, B, or C opacity on the ILO scale; (B) by biopsy or autopsy that yields massive lesions in the lung; or (C) by other means that could reasonably be expected to yield results described in clause (A) or (B). 30 U.S.C. § 921(c)(3). Despite these seemingly rigid categories, the Act requires the consideration of "all relevant evidence" before making a determination about an award for benefits. *Id*. § 923(b). In making that determination, the ALJ is required not only to "weigh all relevant evidence within each category set forth in § 921" but also to "weigh evidence from different categories (e.g., x-ray vs. autopsy) against one another." *See Gray v. SLC Coal Co.*, 176 F.3d 382, 389 (6th Cir. 1999).

## C.    Analysis

Petitioner's primary criticism of the ALJ is that after concluding that neither the x-rays or CT scans were sufficiently conclusive to establish the irrebuttable presumption under 30 U.S.C. § 921(c)(3), the ALJ then considered the x-rays alongside the medical opinions of Drs. Harrison, Dahhan, and Vaezy. The process that the ALJ used to determined that Respondent was entitled to the irrebuttable presumption under § 921 was not in error. Our pronouncement in *Gray* that an ALJ must not only "weigh all relevant evidence within each category set forth in § 921" but also must "weigh evidence from different categories (e.g., x-ray vs. autopsy) against one another" undercuts Petitioner's argument. The ALJ did exactly what the *Gray* court instructed it to do. He first considered the x-ray evidence, concluding that such evidence standing alone was insufficiently conclusive to invoke the irrebuttable presumption. He next considered the CT scan evidence, and again found that those results unto themselves were not definitive enough to invoke the presumption. He then weighed the medical opinion testimony and found that such testimony supported a finding of complicated pneumoconiosis. Finally, the ALJ proceeded to consider all of the evidence "in its entirety," not just categorically, and determined that the x-ray and CT scans, while inconclusive in isolation, were sufficient when combined with the medical opinions as well as Respondent's employment and medical histories to invoke the irrebuttable presumption.

The propriety of the ALJ's process is confirmed by our decision in *Maynard v. Eastern Coal Co.*, 328 F. App'x 980 (6th Cir. 2009). In that case, an ALJ had found that the x-rays "supported a finding of, at the very least, simple [pneumoconiosis]," but the Board remanded for further consideration of the medical opinions. *Id.* at 984. After weighing the x-rays against the medical opinions, an ALJ determined that the miner did not have simple pneumoconiosis as the x-rays had

seemed to indicate. *Id*. We affirmed the ALJ's decision, and in so doing, endorsed the decisional methodology that Petitioner claims is in error here: using medical opinions that rely on x-rays to come to the opposite conclusion about the existence of pneumoconiosis than the x-rays, when considered in isolation, would tend to support. In *Maynard*, the x-rays supported a finding of pneumoconiosis and the medical opinions did not; here, the x-rays were inconclusive as to a finding of complicated pneumoconiosis but the medical opinions support a finding of complicated pneumoconiosis. In each case, the ALJ found that the medical opinions were deserving of more weight in the overall balancing. Therefore, we find no error in the decisionmaking process used by the ALJ.

Because the process by which the ALJ came to its determination was not erroneous, Petitioner is left to argue that substantial evidence does not support the ALJ's decision. As noted above, however, "[w]hen the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, [the] scope of review is exceedingly narrow." *Peabody Coal*, 342 F.3d at 489. The ALJ seemed to give the most weight to Dr. Harrison's opinion. He did so because, unlike the other doctors, Dr. Harrison reviewed a series of x-rays and opined that those scans revealed the progression of the disease from simple to complicated. Further, Dr. Harrison was the only doctor to take into account Respondent's negative skin test for tuberculosis, which Dr. Dahhan suggested might have been the cause of the masses in Respondent's lungs. Moreover, it is clear that the ALJ did not look at Dr. Harrison's testimony through rose-colored glasses. The ALJ discounted Dr. Harrison's diagnosis because he is not a B-reader, but he thought that the extensive symptomology and comparative analysis done by Dr. Harrison made his opinion quite credible.

Lastly, Dr. Harrison's diagnosis was confirmed by Dr. Vaezy, who is a B-reader and was proffered by neither Petitioner nor Respondent.

The ALJ also reasonably discounted Dr. Dahhan's opinion. First, that opinion was contrary to the two other examining doctors' opinions. Second, Dr. Dahhan relied on readings by Dr. Scatarige who thought that Respondent has "histoplamosis or TB" but did not have the information about Respondent's negative TB test. Additionally, Dr. Scatarige's diagnosis, on which Dr. Dahhan relied, was equivocal in that Dr. Scatarige recommended further testing. We have previously viewed a doctor's opinion as undercut where he "request[ed] further medical information on the miner." *See Baker v. Arch on North Fork, Inc.*, 129 F.3d 1263, at *2 (6th Cir. 1997) (table decision). While the ALJ found that Dr. Dahhan's opinion was entitled to some weight, he ultimately concluded that it was outweighed by Dr. Harrison's better reasoned and documented opinion, which was confirmed by Dr. Vaezy.

Given the limited scope of our review and the ALJ's thorough discussion of the evidence and opinions, we conclude that there is substantial evidence to support the conclusion that the irrebuttable presumption of total disability from complicated pneumoconiosis was reasonably invoked.

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review, thereby affirming Respondent's award of benefits.